## McLarren *versus* Robertson.

1. Words used in a release ought not to be extended beyond the consideration for it.

2. An instrument, not under seal, was to this effect: According to my purchase from A. B. of his entire interest, both personal and real, of the Bolivar property, belonging to the firm of H. & Co., and A. & Co., for which a deed has this day been given, I entirely release A. B. from all responsibilities belonging to both firms, *by assuming all debts due* or to become due from A. B., from the said firms, previous to this date.

It was *held* that the release was not to operate by a legal effect in the instrument in discharging the demands against the partnerships due to the releasor and others; but by the party who executed it *assuming* B.'s proportion of the debts payable by B. and his copartners to other persons than to the releasor himself; and that though the proportion of the indebtedness of B. to the releasor in certain bonds secured by mortgage and executed by B. and his copartners, was to be deemed satisfied, yet that the instrument did not operate as a release of the other portions of the bonds as against the other obligors and mortgagors.

ERROR to the Common Pleas of *Westmoreland county*.

This was a writ of error by Joseph Nixon, Sarah Sterm, W. Nixon, and J. S. McLarren, plaintiffs in error, *v.* S. C. Cole, J. F. Cole, and James Robertson, defendants in error.

The case was a feigned issue directed by the Court of Common Pleas to try and determine what amount, if anything, was due and owing to J. S. McLarren, upon two certain mortgages and bonds

accompanying, which he claimed to be valid liens upon, and ought to be paid out of the fund arising from the sale, by the sheriff, of the real estate of the Bolivar Brick Works Company, of which J. S. McLarren and the defendants in error, *at the time of sale,* were part owners.

The property was sold on 11th November, 1850, by virtue of writs issued on judgments against Alexander Harley, Andrew Bruce, and George Armstrong. These judgments were rendered on 5th November, 1847, 22d April, 1848, and 8th July, 1848, and being the first liens, were entitled to satisfaction. Deducting their aggregate amount from the whole fund, there was left about $5200 for appropriation. The next liens which were *primâ facie* entitled to payment were two mortgages to J. Shaw McLarren (the mortgages in controversy).

The real estate out of the sale of which the fund in Court arose, was sold and conveyed by John Hugus and wife to Alexander Harley, Andrew Bruce, and George Armstrong, by deed dated 7th April, 1847. The tract contained about two hundred and fifty acres; the *habendum* in the deed was to the grantees, and their heirs and assigns for ever.

On the 31st October, 1848, the three grantees, Harley, Bruce, and Armstrong, executed a bond and mortgage to James S. McLarren, for $1200, payable 1st November, 1848, with interest from date. This mortgage was recorded on the 1st November, 1848, and at the same time judgment was entered upon the bond, which contained a warrant for that purpose.

On the 8th May, 1849, Armstrong and Bruce executed a bond and mortgage to said McLarren, for $5000, payable on the 1st November, 1849, with interest. This bond was not recorded till 18th March, 1850, when judgment was entered on the bond.

On the 12th July, 1849, Harley conveyed all his interest in said real estate to Bruce and Armstrong, as well as all his interest in the firm of Harley, Bruce & Armstrong, and the grantees were to indemnify him against any and all liability for or on account of his connection with that firm.

On the 25th September, 1849, Bruce and wife conveyed one undivided third part of the real estate in question to said McLarren, and on same day Bruce and Armstrong conveyed one undivided third part of said real estate to *Joseph Nixon.* And at same time McLarren gave to said Bruce a paper, as follows:—

"According to my purchase from Andrew Bruce, of his entire interest, both personal and real, of the Bolivar property, belonging to the firms of Harley & Co. and Armstrong & Co., and for which a deed has this day been given, I entirely release Andrew Bruce from all responsibilities belonging to both firms, by assuming

all debts due, or to become due, from Andrew Bruce, from the said firms, previous to this date, 25th September, 1849.

"J. Shaw McLarren."

Harley, Bruce, and Armstrong constituted the firm of Harley & Co. up till 3d January, 1849. From that time till Harley sold out the style was Armstrong & Co.; and afterwards Bruce and Armstrong continued to trade as Armstrong & Co. till 25th September, 1849, when, as stated, Bruce sold out, and a new firm was formed, viz., Armstrong, McLarren, and Nixon, who traded at Bolivar as Armstrong & Co., and at Pittsburgh as J. Shaw McLarren & Co.

On the 28th March, 1850, Joseph Nixon and wife conveyed all their interest, real and personal, in the property of the firms, being the one undivided third part of the real estate out of which the fund arose, to James Robertson, one of the plaintiffs in this issue, and now a defendant in error. After this purchase, Robertson entered the firm in the room of Nixon, the consideration he was to pay being $2000. Nixon took, in satisfaction thereof, an assignment of that amount of the $5000 mortgage from James S. McLarren; and Robertson was then to pay the purchase-money into the concern, in order to assist in carrying on its business. In this manner Nixon became one of the defendants in the issue, as the assignee of a part of the $5000 mortgage.

On the 24th April, 1850, George Armstrong and wife sold and conveyed all their undivided third part of the real estate, and all their interest in the firms to S. C. & J. F. Cole, who then entered the partnership in the room of said Armstrong, and the style was then changed to McLarren & Co.

The defendants in the issue below, being the plaintiffs in error, alleged, and offered testimony to show, that the whole of the first mortgage, and about $4000 on the latter one, was due and unpaid to McLarren at the time he purchased from Bruce. They also further alleged, and offered evidence to prove, that in all the various changes which took place as to the ownership of this real estate, and in the members of the several firms, the purchasers and incoming partners always had notice of these mortgages, and that they bought and entered under the express agreement to become responsible for all the firm debts of their predecessors; all of which allegations the defendants in error denied.

McLarren and his assignees, Joseph Nixon, Sarah Sterm, and William Nixon, claimed to be paid or allowed the amount which they alleged to be due upon these mortgages; whilst Robertson and the Coles claimed the residue of the fund after payment of liens prior to the mortgages, or at least two-thirds of it, as the owners of the fee; and this issue was directed by the Court to

[McLarren *v.* Robertson.]

try and determine whether the mortgages were paid, satisfied, or extinguished in whole or in part.

TAYLOR, J., before whom the cause was tried, instructed the jury, "That the release given by McLarren to Bruce, on the 25th September, 1849, from its date operated *as a release of all liability or indebtedness of Bruce upon the mortgages of McLarren;* and if the mortgages and the debts which they evidenced and secured, were responsibilities belonging to either of the firms mentioned in the paper; or if the giving of the mortgages was in the course of the business of those firms, and was a partnership transaction, then that it operated as a release of the co-mortgagors, and a virtual extinguishment of the debt."

The case of Milliken *v.* Brown, 1 *Rawle* 391, was referred to.

Verdict was rendered for the plaintiffs in the issue; finding that there was nothing due on the mortgages in consequence of the instrument executed by McLarren; and also finding that at the time the mortgages were executed, Bruce, Armstrong, and Harley were the owners of the mortgaged premises.

The said instruction, *inter alia*, was assigned for error.

*Hampton* and *Cowan* were for plaintiffs in error.—The case of Schock *v.* Miller, 10 *Barr* 402, was referred to, and it was contended that the only question was, whether the instrument executed by McLarren to Bruce operated to the injury of Harley and Armstrong. McLarren merely took the place of Bruce in the firm, and the two others were not prejudiced; *their portion of the responsibility was not increased.* By the instrument executed by McLarren, Harley and Armstrong were placed in a better position, as Bruce might have become insolvent. It was contended that the release was merely of Bruce's *personal responsibility*, and did not affect the mortgages. The Coles and Robertson had been in the firm but a few weeks; the former had paid but a few hundred dollars, and it would be unjust to allow them to defeat the mortgages which were given, as alleged, for money borrowed for the old firm.

It was contended that in the case of Milliken *v.* Brown, 1 *Rawle* 391, the rule as to a release was laid down too broadly; that the release ought to be limited by *the intention of the parties* and the rights of all interested in the matter: 1 *Cowen* 122; 7 *W. & Ser.* 317; *Id.* 81; 6 *Barr* 51; 9 *Mass.* 238; 8 *Barr* 265, Mortland *v.* Himes; 10 *Barr* 401, Schock *v.* Miller; 5 *Barn. & C.* 281; *Story's Eq. J.* 883, note.

It is only a technical release, *under seal*, to one of several joint or joint and several obligors, which discharges the others: 7 *Johns.* 207; 4 *Greenl.* 421; 9 *Wendell* 336; 3 *Ves.* 334.

[McLarren v. Robertson.]

*Foster*, for the defendants in error.—It was contended that, by the instrument, McLarren released Bruce, one of the obligors, and that this operated as a release of the other obligors. It has been held that *a release* of one obligor is an absolute discharge of the other obligors, *even against the intent of the parties to the transaction :* 2 *John's Rep.* 448, 186 ; 2 *Sel.* 575 ; 2 *Saund.* 48. In Pennsylvania, the instrument of discharge need not be under seal: 1 *Rawle* 391, Milliken v. Brown. Each of the cases of Mortland v. Himes, 8 *Barr* 265, and of Schock v. Miller, 10 *Barr* 401, were the cases of the discharge of a *surety*. In the case in question, the parties to the bonds were all principal debtors. The discharge of the debts discharged the mortgages, which were but securities for the debts.

The opinion of the Court was delivered by

LEWIS, J.—Words used in a release ought never to be extended beyond the consideration, otherwise a release would often be what was never intended by the parties: Rapp v. Rapp, 6 *Barr* 45. In the case before us, the consideration for the release, as stated in the paper itself, was the conveyance by Bruce of his entire interest, both personal and real, in the Bolivar property, belonging to the firms of Harley & Co., and Armstrong & Co. ; and McLarren, the purchaser, in consideration of this conveyance of Bruce's interest in the property of those firms "releases Bruce from all responsibility belonging to both firms." It is not pretended that the release is confined to demands held by McLarren himself; although in strict construction of the word release, it would operate upon no other. McLarren could not release demands which did not belong to him. Nevertheless, by the express terms of the contract, Bruce was to be released from "all the responsibilities belonging to both firms." How was McLarren to do this ? The instrument is clear and explicit on this point. The "release" was not to be accomplished by means of the legal effect of the instrument, in extinguishing or discharging each demand against the designated partnerships, but by means of McLarren's "assuming all debts due, or to become due from Andrew Bruce, from the said firms previous to this date, 25th September, 1849." Taking the whole instrument together, although the word *release* is used, it is manifestly not a release from the claims held by McLarren, but a contract by the latter to pay Bruce's proportion of them, as well as his proportion of all other debts of the firms of which he was a member. It is true that in regard to the claims held by McLarren himself, as his was the hand both to pay and to receive, equity will consider that done which ought to be done, and Bruce's proportion of the claims held by McLarren, must be deemed satisfied: 1 *Barr* 361. That is, Bruce must receive credit on these claims to the same amount and in the same manner as if he had paid his

[McLarren *v.* Robertson.]

proportion of them to the creditor.   Such a payment would certainly not operate as a release of the residue.   It would merely constitute a defence against any claim by his copartners for contribution.   This was all the release that was contemplated by the parties.   We are of opinion that the Court below were in error in giving the instruction that " the release of McLarren to Bruce was a release of his co-mortgagors, and operated as an extinguishment and satisfaction of both mortgages."   This disposes of the only error assigned.

Judgment reversed and *venire de novo* awarded.