# Hay *v.* Baer, Appellant.

*Contracts—Construction—Intention of parties—Vendor and vendee—Agreement of exchange—Rent.*

1. However general the terms may be in which an agreement is conceived, it only comprehends those things in respect to which it appears that the contracting parties proposed to contract; and not others they never thought of.

2. Where two persons agree in writing to exchange residential premises, and the second party is given the option of paying a certain amount in cash instead of conveying his own property, and the agreement further provides that if the first party shall vacate his property sooner than the time stipulated, the second party shall pay rent for his own house between the time of such vacation and the surrender of his own house, and the second party exercises the option to pay in cash, the first party cannot demand from the second party any rent for the latter's property after he has received the cash payment in lieu of the property.

Argued April 14, 1911.   Appeal, No. 93, April T., 1911, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1903, No. 584, on verdict for plaintiff in case of James Hay *v.* Morris Baer.   Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Assumpsit to recover rent.   Before FRAZIER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $261.56.   Defendant appealed.

*Error assigned* was in overruling motion for defendant n. o. v.

*W. B. Rodgers,* for appellant.

*Ed. G. Hartje,* for appellee.

OPINION BY RICE, P. J., October 9, 1911:

In the sealed instrument dated December 12, 1902, on which this action of assumpsit was founded, the plaintiff bargained, sold, and agreed to convey to defendant, by deed in fee simple, certain premises on Graham street, and in consideration thereof defendant bargained, sold, and agreed to convey to plaintiff, by deed in fee simple, certain premises on Stratford avenue. It was further agreed that deeds for the properties should be delivered on or before February 15, 1903. The instrument contained the proviso that the defendant should have "the option of paying $11,000 cash instead of deeding and conveying his property No. 221 Stratford avenue inside of 30 days from date." On December 23, 1902, defendant gave notice of his exercise of the option, and, on January 12, 1903, plaintiff delivered to defendant his deed for the Graham street premises and vacated the same, and, on the same date, defendant paid to plaintiff the cash consideration of $11,000 and took possession. The present controversy grew out of the concluding clause of the agreement, which reads as follows: "The said party of the first part (plaintiff) agrees to give possession of his property No. 350 Graham street February 15, 1903, and the said party of the second part (defendant) agrees to give possession of his property No. 221 Stratford avenue on April 1, 1903. If the said party of the first part succeeds in getting a house sooner he will vacate said Graham street property sooner provided said second party pays rent from the time he vacates until April first for house on Stratford avenue at rate of $75 per month." The plaintiff declared for rent, at the rate of $75.00 per month, from January 12, 1903, to April 1, 1903, together with interest thereon from the latter date.

It is contended that the sole condition upon which the defendant's obligation to pay rent depended was the plaintiff's vacation of the Graham street premises prior to February 15. According to this narrow interpretation, the condition would arise if the plaintiff vacated the prem-

ises a day before. This, at the best, was a remarkable contract for the parties to make, but it would not be wholly absurd or unreasonable as applied to the exchange of properties primarily contemplated, for the money paid by the defendant would tend to overcome the inequality resulting from the difference in the dates of delivery of possession of the respective premises. But to apply it in the event of the defendant's election to pay cash for the plaintiff's property, would result in an inequality, which, even if a gross sum had been named, instead of rent at the rate of $75.00 per month, it would be doubtful if the parties contemplated. We, however, need express no decided opinion as to the construction of the clause if a gross sum had been named; the agreement was to pay rent. To hold that it applies in the event of a purchase for cash is to compel defendant to pay rent for his own premises notwithstanding the contract, so far as the transfer of the title and possession of either piece of real estate was concerned, was fully executed by payment of purchase money and delivery of deed and possession on January 12. This construction means, as the appellant's counsel tersely says, that although plaintiff had sold his property and had the price in his pocket, he was also entitled to make defendant pay rent for his own property in which he, plaintiff, had no interest whatever. If the words compel a construction producing such unreasonable result, we must adopt it. But before concluding that the words of the contract compel, it is necessary to take more than a superficial view of the single clause, "provided said second party pays," etc. In Case v. Cushman, 3 W. & S. 544, GIBSON, C. J., said: "It is one of Pothier's rules on interpretation, which have been deemed consonant to the rules of the common law, that 'however general the terms may be in which an agreement is conceived, it only comprehends those things in respect to which it appears that the contracting parties proposed to contract; and not others they never thought of.'" The principle, expressed in the maxim verba generalia restringuntur ad habilitatem rei

vel personæ, has been recognized and applied in a great variety of adjudicated cases, amongst which may be mentioned: Rapp v. Rapp, 6 Pa. 45; McLarren v. Robertson, 20 Pa. 125; Codding v. Wood, 112 Pa. 371; Smith's Est., 210 Pa. 604; Weaver v. Griffith, 210 Pa. 13; Steele v. Maher, 38 Pa. Superior Ct. 183; Cape May Real Est. Co. v. Henderson, 42 Pa. Superior Ct. 1. An examination of these and other cases which show the principles upon which the rule rests leads to the conclusion that it may be followed here without doing violence to the language of the contract. It requires no undue expansion of the rule of construction to hold that this provision as to payment of rent was intended to apply only in the event of the exchange of properties being carried out. Amongst the considerations which tend to support this construction of the agreement, is, first, the place wherein the clause as to payment of rent occurs. We have quoted the whole paragraph, and it will be seen therefrom that the provision as to delivery of possession of the respective properties is very general. While the words are that the defendant should deliver possession of his premises on April 1, yet no one would contend that that provision would apply in the event of his electing to purchase for cash the plaintiff's premises. It is in the same connection that the clause relative to payment of rent occurs, and it needs no extended argument to show that the primary thought of the parties was the exchange of properties and the making of the exchange equal, as we have already indicated. In the second place, the covenant, treating the words as in reality constituting a covenant on the part of the defendant, is to pay "rent," which has been defined to be the compensation, either in money, provisions, chattels, or labor, received by the owner of the soil from the occupant thereof, or, as otherwise defined, a certain profit, either in money, provisions, or labor, issuing out of lands and tenements in return for their use. Why should we assume, for the purpose of sustaining an unreasonable construction, that the

term rent was not used by the parties in this sense? It was a perfectly proper sense in which to use the term if the exchange had been carried out, for, from the very execution of the agreement, at least after the period for exercising the option had expired, the plaintiff had an interest in the premises of the defendant, and such an interest and ownership as would make it a perfectly reasonable and proper thing for the defendant to agree to pay rent for the use of the premises up to April 1. The use of this term "rent" in the so-called covenant throws light upon the transaction and furnishes quite satisfactory evidence that the parties contemplated the state of affairs in which the payment of rent, as such, would be a legitimate and proper compensation to the plaintiff for the defendant's use and possession of the premises up to April 1. Of course, it was competent for the parties to agree that the defendant should pay for the use of his own premises even after any interest, present or prospective, legal or equitable, of the plaintiff had ceased; but we are not convinced that the parties intended that. The more reasonable conclusion is that they used the word "rent" with full comprehension of its meaning, and, therefore, that they did not intend the clause to apply in an event in which rent, in the proper sense of that term, could not by any possibility accrue. Thus viewing the case, we are of opinion that verdict for the defendant should have been directed, and, therefore, that judgment n. o. v. should have been entered in his favor.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment for the defendant.