386 A.2d 66

**Gordon J. EBRIGHT, Appellee,**

**v.**

**Foster S. SHUTTER and Mary Jane Shutter, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1976.

Decided April 28, 1978.

James T. Reilly, Lebanon, for appellants.

W. Parker, Lebanon, with him Charles V. Henry, III, Lebanon, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This action was brought in equity seeking enforcement of a covenant not to compete executed in connection with the sale of a restaurant. The sole issue on which appeal has been taken is the measure of damages resulting from the undisputed breach of the covenant.

For approximately twenty years appellants, Foster S. Shutter and his wife Mary, owned and operated the Railroad House Restaurant in Lebanon County. In April of 1972, appellants executed a written agreement to convey to the plaintiff-appellee, Gordon Ebright, their entire restaurant business including the real estate, equipment, liquor license, and good will for a total consideration of $105,000.00. The

aforesaid consideration was apportioned among the various assets comprising the business. Thus, the agreement, in relevant part, stated:

"F.  It is agreed that the good will covenant not to compete shall have allocated thereto a consideration of Twenty-eight Thousand Three Hundred Eighty-three Dollars ($28,383.00)."

The "good will covenant not to compete" provides:

"The Sellers agree that for a period of five (5) years, commencing from the time of settlement between the parties, they will not engage in any way, directly or indirectly, in any business competitive with the Purchaser's business within the radius encompassing Lebanon County, Pennsylvania."

In May of 1973, appellee's attorney advised appellants that he had learned they were planning to violate the restrictive covenant by opening another restaurant, and if they persisted appellee would resort to his legal remedies. Notwithstanding the restrictive covenant and the foregoing warning, in October of 1973, appellants purchased and opened the Fireside Restaurant in Lebanon County. Appellee responded by instituting the instant equity action. Following a hearing, a decree nisi was entered enjoining appellants from engaging in the restaurant business in Lebanon County. In addition, damages in the amount of $9,812.05, plus $15.55 per day for any future violations of the covenant, were assessed against appellants. From the court en banc's dismissal of appellants' exceptions pertaining to the determination and computation of damages, this appeal ensued.

The only issue before us is whether the court below employed an appropriate measure of damages in calculating the loss resulting from appellants' breach of the non-competition or restrictive covenant. In this regard, the chancellor's opinion in support of the decree nisi pertinently states:

"[Defendant-appellants] should not only be enjoined under the terms of the covenant but they ought to be made to respond in damages to the plaintiff in an amount calculated on the value they placed upon the non-competition

covenant for the number of days they have violated the covenant to the date of the Decree, and at a daily rate thereafter that they are in violation of the covenant." The court en banc elaborated upon the chancellor's rationale by observing that "the value of not competing was fixed by the defendants themselves. Thus, what better and more equitable way of imposing damages then to prorate that consideration over the five year period as this Court did." Accordingly, the chancellor reduced the five years specified in the covenant into 1825 days and divided the total days into $28,383.99 which was the consideration allocated to the covenant by the parties; this resulted in a daily rate of $15.55. The chancellor then multiplied the daily rate times the number of days included in the period from October 1, 1973 (the date appellants commenced competition in violation of the covenant), through June 23, 1975, when the Decree Nisi was entered, arriving at the figure of $9,812.05 as the amount of damages.

Appellant argues that the method used by the court in determining the damages arising from appellants' conceded breach of their covenant not to compete amounted to treating the contract as if it contained a liquidated damages provision. Appellants contend such reasoning by the court, in effect, read an impermissible penalty provision into the contract; whereas, the only measure of damages the court should have considered was lost profits. Thus, appellants seek to require appellees to prove, as a matter of law, lost profits, perhaps the most legally constrained, in terms of the precision of proof required, measure of damages for breach of contract. See D. Dobbs, Remedies 153–55 (1973). We disagree with all aspects of this argument and will affirm the decree and order of the court below.

■ As a general rule, courts ordinarily do not grant damages in addition to specific performance, in large part because such an award would constitute an inequitable windfall for the promisee, at least where specific performance alone of the contract affords the promisee the full benefit of his bargain. See generally 81A C.J.S. Specific

Performance § 197 (1977); 71 Am.Jur.2d, Specific Performance § 216 (1973). However, when specific performance is not sufficient to place the parties in the position in which they would have been had the contract been performed as contemplated, an additional award of money may be entirely proper in order to equitably adjust this difference. *Id.* See also 5 Corbin on Contracts § 1105 (1964). Sometimes, unfortunately, this monetary adjustment is often called "damages," although it is more in the nature of equitable compensation or an accounting. 71 Am.Jur.2d, Specific Performance § 216 (1973). It was just such a misinterpretation of the court's award in the instant case which led appellants to believe that appellees could only recover money for the breach if they proved lost profits; in other words, damages to their expectation interest. This is not the case.

■ In Pennsylvania, the courts have often found it necessary to award money damages to a promisee in addition to specific performance in order to place the parties more nearly in the position equity requires them to be. See, e. g., *Buswell v. Buswell,* 377 Pa. 487, 105 A.2d 608 (1954); *Andrien v. Heffernan,* 299 Pa. 284, 149 A. 184 (1930); *Sayre Borough v. Waverly, Sayre & Athens Traction Co.,* 270 Pa. 412, 113 A. 424 (1920); *Jones v. Aronson,* 45 Pa.Super. 148 (1911). In instances where full performance is not possible, an abatement of the purchase price may be appropriate, the amount of the abatement being a question of fact for the court or the jury to resolve as the case may be. *Andrien v. Heffernan,* supra. Furthermore, when the impossibility of full performance results in a diminished quantity of items to be conveyed, the courts frequently grant a pro rata abatement of the purchase price. See 81A C.J.S. Specific Performance § 199 (1977).

■ From the foregoing, it can be seen that the court's grant of specific performance in the instant case was, in essence, accompanied by a pro rata abatement of the consideration paid, as apportioned by the parties, for the "goodwill covenant not to compete." While, arguably, this abatement was not the most accurate reflection of the harm caused

appellees by appellant's breach, it was not unjust by any means. By the very nature of covenants not to compete, damages in the nature of lost profits are difficult to establish with mathematical certainty and only reasonable certainty will be required. *Ross v. Houck,* 184 Pa.Super. 448, 136 A.2d 160 (1957). Cf. *Jones v. Aronson,* supra. Often the reasonable certainty required may be fulfilled by looking to a restitutionary measure of damages. See D. Dobbs, Remedies 150–53 (1973). Proof that the parties attached a particular value to the covenant not to compete for five years was competent evidence of the contractual loss appellees sustained during the time appellants operated a restaurant in competition with them; and, especially in the absence of alternative evidence of appellees' actual loss, which appellants never offered, the lower court's award should be affirmed.

Order affirmed.

HOFFMAN, J., concurs in the result.

SPAETH, J., files a dissenting opinion in which PRICE, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The lower court asked, "[W]hat better and more equitable way of imposing damages than to prorate [the] consideration [paid] . . . .?" The answer to this question is that the amount of consideration paid has nothing to do with the determination of what damages should be imposed. A promisor may receive a very large consideration, but his breach of promise do very little damage; or he may receive a very small consideration, but his breach of promise do a great deal of damage. Thus, the fact that here the sellers received $28,000 in consideration for their promise not to compete has nothing to do with the case. I therefore cannot agree with the majority, that "[p]roof that the parties attached a particular value to the covenant not to compete

. . . was competent evidence of the contractual loss . . . ." Majority Opinion at 515. To the contrary, it was no evidence at all.

Nor do I see any basis for the majority's conclusion that there was no "alternative evidence of . . . actual loss." Majority Opinion at 515. The alternative—and only competent—evidence was evidence of lost profits. As the majority observes, these need be shown only with reasonable certainty. If not even that can be done, the conclusion should be, not that damages should be measured by the amount of consideration paid, but that no damage was done.

The case should be remanded for hearing on damages only.

PRICE, J., joins in this opinion.