473 A.2d 1035

**Regis S. SOBERS, D/B/A West Penn Optical**

v.

**SHANNON OPTICAL COMPANY, INC., and David Gallaway, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1983.

Filed March 2, 1984.

172

Allan Joseph Opsitnick, Pittsburgh, for appellants.

Bruce L. Getsinger, Erie, for appellee.

Before ROWLEY, WIEAND and HESTER, JJ.

HESTER, Judge:

Appellee sought and received an injunction prohibiting appellants Shannon Optical Company, Inc., (hereinafter Shannon) and David Gallaway from engaging in any business which was directly or indirectly competitive with appellee. It is from this injunction and from damages assessed against Shannon and Gallaway individually that appellants have filed this appeal.

Appellee purchased appellants' business in northwestern Pennsylvania on October 29, 1976. The agreement was executed by Gallaway as President of Shannon and, in exchange for additional consideration, included a covenant by Shannon and by Gallaway individually not to compete with appellee in Erie and eight adjacent counties for a period of five years. Shortly thereafter, appellee discovered that appellants continued to solicit and procure business orders in the aforesaid areas. After repeated requests to appellants to discontinue their business in the restricted locales, appellee filed a complaint in equity seeking to enjoin appellants from further operations. On February 9, 1981, the chancellor entered a decree nisi enjoining Shannon from violating the covenant not to compete and assessing damages against it. Following the dismissal of exceptions, the order was finalized on November 23, 1981. On February 3, 1982, the court en banc entered an order, affirming the decree nisi and amending the final order to award appellee additional damages in the amount of $4,052.46 against Gallaway individually. Appellants thereafter filed this timely appeal.

Initially, appellants assert that the lower court did not have jurisdiction to amend its order of November 23, 1981. Specifically, they contend that the order was amended be-

yond the allowable time period as permitted by 42 Pa.C.S.A. § 5505. This provision states:

"Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."

Appellants argue that the above-cited language required any amendment to the order of November 23, 1981, to be made prior to December 23, 1981, that is, 30 days after the entry of the original order. Thus, appellants continue, the lower court lacked jurisdiction to enter an order on February 3, 1982.

■ Appellants misapprehend the facts. Appellee filed a petition for clarification of the November 23, 1981, order on December 7, 1981; said petition was granted that day. At the same time, the lower court entered an order whereby it stayed all proceedings and specifically tolled all relevant time limitations. Consequently, the lower court's amendment of its November 23, 1981, order on February 3, 1982, was timely.

■ Appellants' contention that the December 7, 1981, order was prohibited by law is devoid of merit. Section 5504(a), upon which appellants rely to support this contention, states that "time limited by this chapter shall not be extended by order, rule, or otherwise." 42 Pa.C.S.A. § 5504(a). However, a suspension of proceedings and a tolling of time limitations cannot be construed as the equivalent of an extension of time. The trial court's action in staying the proceedings until appellee's petitions for clarification was acted upon was consistent with Pa.R.C.P. 1522, which empowers the court to grant any petition setting forth "a special matter or cause for which such rehearing is sought." If such a petition is filed no later than the time for taking an appeal, it is timely and will be considered by the court. As seen above, appellee filed his petition within the 30-day appeal period. Thus, the lower court was vested with the authority to stay all proceedings until the above-mentioned petition was duly considered.

■ Appellants next argue that the lower court erred in dismissing their exceptions wherein they asserted various errors of law and fact. Our scope of review in these instances is limited. The findings of fact of a chancellor will not be set aside unless the error is manifest. *Van Schoiack v. United States Liability Ins. Co.*, 390 Pa. 27, 133 A.2d 509 (1957). "The chancellor's findings of fact, affirmed by the court en banc, have the effect of a jury verdict and will not be reversed on appeal if adequate evidence is presented to support them and they are not premised on erroneous inferences and deductions or an error of law." *Krosnar v. Schmidt Krosnar McNaughton*, 282 Pa.Super. 526, 534, 423 A.2d 370, 374 (1980), citing *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207 (1976).

Mindful of our limited functions, we conclude that appellants' exceptions were properly dismissed. In their first exception, appellants contended that the chancellor erred in his finding that certain factual evidence was irrelevant. Appellants attempted to show through testimony that they did not solicit business with appellee's customers, but rather that the customers approached them after becoming dissatisfied with appellee's service. The trial judge noted that "this fact is irrelevant to the issue of whether Shannon violated the contract with West Penn." Appellants also excepted to the lower court's conclusion that the Uniform Commercial Code was not determinative of what constitutes competition with regard to restrictive covenants.

This court has traditionally held that covenants not to compete which are ancillary to buy-sell agreements are not subject to as stringent a test of reasonableness as that applied to employment contracts. *Alabama Binder & Chemical Corp v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 220, 189 A.2d 180, 182 (1963). Restrictive covenants effectuated in conjunction with employment contracts have long been enforced if designed to protect a legitimate business interest of the employer and if reasonably limited in duration and area. *Boldt Machinery &*

*Tools, Inc. v. Wallace,* 469 Pa. 504, 511, 366 A.2d 902, 906 (1976). Herein, appellants concede that the agreement in question is valid. Thus, we are, in effect, asked to review the chancellor's interpretation of the covenant.

■ The lower court found that appellants' commercial transactions with its former clients violated their promise not to compete with appellee. By characterizing as irrelevant the fact that the customers sought to continue their business relationships with appellants, the chancellor was merely interpreting the covenant in a manner not inconsistent with the holdings of this Court. The covenant language stated:

"the Seller [Shannon] agrees that it will not compete directly or indirectly with the Buyer, nor will it engage in a business which is in any nature similar to the said business being purchased by the Buyer...."

Appellant Gallaway also agreed:

"not compete directly or indirectly in the business which is being sold to the Buyer herein, nor will he engage in said business, directly or indirectly, nor will he act as a representative, agent, or principal in any business which is directly or indirectly competitive or incidental to this business...."

Nowhere did it specifically state that appellants would only restrict their activities with regard to soliciting business. Rather, the covenant language was broad and general in its prohibition against engaging in any business which directly or indirectly competed with appellee. We find no error in the chancellor's interpretation of this language according to its facial and common sense meaning. The covenant was accorded a reasonable construction in light of the buy-sell agreement and in view of the added consideration received.

■ Likewise, appellants' argument concerning the application of the U.C.C. was properly rejected. Pursuant to the U.C.C., a contract for the sale of goods is formed where the offer is accepted. Since the contracts in question were formed in Allegheny County, appellants contend that their business transactions with companies in the nine county

area did not constitute a breach of the restrictive covenant. This over-technical translation of the covenant not to compete finds no support in the unambiguous language recited above. Appellants promised not to compete indirectly with appellee. Negotiating a contract in Allegheny County with customers in the restricted area, calling upon those customers, and servicing their employees constitute the exact type of competition which the restrictive covenant was specifically designed to prevent.

Completion of the legal formalities in a nonrestricted county is a mere attempt to circumvent the spirit and obvious intent of this covenant and, in fact, evinces a degree of bad faith by the parties who freely accepted the consideration proffered by appellee in exchange for their promise not to compete. For the above reasons, we find adequate evidence to support the chancellor's findings.

Finally, as to the issue of damages, appellants contend that the chancellor utilized an improper measure of damages when it awarded appellee the sum of $4,023.46. Appellant Gallaway also alleges error by the lower court for assessing like damages against him individually. Once again, we uphold the chancellor's decisions.

The lower court awarded damages to appellee based upon the holding of this Court in *Ebright v. Shutter*, 254 Pa.Super. 509, 386 A.2d 66 (1978). Therein, we held:

> "By the very nature of covenants not to compete, damages in the nature of lost profits are difficult to establish with mathematical certainty and only reasonable certainty will be required. *Ross v. Houck*, 184 Pa.Super. 448, 136 A.2d 160 (1957). Cf. *Jones v. Aronson*, supra [45 Pa.Super. 148 (1911)]. Often the reasonable certainty required may be fulfilled by looking to a restitutionary measure of damages. See D. Dobbs, Remedies 150–53 (1973). Proof that the parties attached a particular value to the covenant not to compete for five years was competent evidence of the contractual loss appellees sustained during the time appellants operated a restaurant in competition with them; and, especially in the absence of alternative evidence of appellees' actual loss, which appel-

lants never offered, the lower court's award should be affirmed."

*Id.* 254 Pa.Super. at 515, 386 A.2d at 69. The covenant not to compete in the *Ebright* case had been assigned a specific value in the contract for the sale of the business. See *Davis v. Buckham,* 280 Pa.Super. 106, 421 A.2d 427 (1980). As in that case, the parties in the case at bar agreed that the value of appellants' promises not to compete was $5,000.00 respectively, totalling $10,000.00.

The chancellor employed the pro rata abatement method utilized in *Ebright,* where the consideration paid for the covenant was apportioned over the life of the restrictive covenant, and assessed damages based on the time period during which the covenant was breached.[1]

Appellants argue that the *Ebright* analysis is inapposite to the facts before us because that case involved the continuing operation of a restaurant business in a single location within a restricted area by covenantors not to compete. Herein, appellants assert that the allegedly violative conduct did not occur on each day of the five-year period or throughout the entire geographic area of the covenant. In fact, appellants contend that the chancellor's refusal to appropriate damages among the nine counties was based upon an erroneous finding that breaches occurred in all of them. Finally, appellants claim that the burden rests upon appellee to prove lost profits, and in the absence of such proof, an award of damages is speculative, improper, and inequitable.

This Court recognized many years ago that ascertaining actual damages for breach of a covenant not to compete is a difficult process. *See Stover v. Spielman,* 1 Pa.Super. 526 (1896). Consequently, in those cases where it is necessary to award money damages, the amount of any abatement of the purchase price is a question of fact for the court or jury to resolve. *Ebright v. Shutter,* supra, and

1. The first evidence of Shannon's breach was a letter of quotation to a company in the restricted area on January 21, 1977. From that date until the decree nisi was entered on February 9, 1981, was the period of breach as computed by the court.

cases cited therein. We find adequate evidence to support the chancellor's application of the *Ebright* method, and we will not disturb his assessment of damages on this appeal.

For the foregoing reasons, we also reject appellants' argument that appellee should prove lost profits. In *Ebright,* we adopted the pro rata apportionment measures of damages after appellants therein failed to offer evidence of appellee's lost profits. Confronted with a similar situation, we will adhere to our above-stated conclusion.[2]

■ Finally, our review of the record convinces us that the chancellor was justified in assessing damages against appellant Gallaway individually in light of his actions as representative and president of Shannon.

In sum, the lower court's decision is fully supported by adequate evidence and is not premised on erroneous inferences or errors of law.

Order affirmed.

[2] The only evidence of lost profits was introduced by appellee, who estimated that the illegal sales by appellants cost him $16,788.21. The uncontroverted evidence of appellee's lost profits exceeds by a substantial amount the total damages awarded by the lower court. Thus, although appellants are correct that the covenants were not breached in all nine counties, we nonetheless find the chancellor's award to be warranted by the breaches which did occur.