**Coyle v. Furtak**

_Allen Feingold_, for plaintiff.
 _James Gross_, for defendant.

WILSON, _J._, May 7, 1993

OPINION

This case comes before the Superior Court on appellant/plaintiff's appeal of the trial court's order of January 22, 1993, denying appellant's motion for post-trial relief.

During the summer of 1987, plaintiff Barbara Coyle became interested in the beauty salon business. After brief discussions with the defendant Doris Furtak, plaintiff began work at the defendant's beauty shop, the Vanity Villa Beauty Salon, which is located at 6817 Torresdale Avenue, Philadelphia, Pennsylvania. Plaintiff worked at defendant's salon, without pay, for approximately three months to learn about the beauty salon business. On or about September 21, 1987, plaintiff and defendant entered into an agreement whereby plaintiff agreed to purchase and defendant agreed to sell the business known as Vanity Villa Beauty Salon. The agreement of sale contained a proviso that the seller, Doris Furtak, would not work in another beauty salon within a one-mile radius of 6817 Torresdale Avenue, for a period of two years.

Some time after the sale of the business, defendant became employed by Dennis and David's Beauty Salon at 4620 Princeton Avenue, 8/10th of a mile from the

Vanity Villa Salon, in violation of the non-compete proviso of the agreement of sale. On January 19, 1989, plaintiff filed a complaint in equity in which she petitioned the court to preliminarily enjoin defendant from working in Dennis and David's Beauty Salon or any other beauty salon located within a one-mile radius of plaintiff's business. On February 7, 1989, pursuant to plaintiff's motion for preliminary injunction, this court signed an order enjoining Doris Furtak from working in a beauty salon within one-mile of Vanity Villa Salon. This order is to remain in effect until February 1, 1990.

On March 31, 1989, plaintiff Barbara Coyle filed notice pursuant to Rule 236 of the Supreme Court of Pennsylvania that judgment by default had been entered against defendant Doris Furtak. Plaintiff thereafter requested a hearing before this court pursuant to her default judgment. Though the default judgment emanated from a complaint in equity, plaintiff is seeking monetary damages through this court. Plaintiff contends that the defendant either requested the old customers of Vanity Villa to follow her to Dennis and David's beauty salon, or by-word-of-mouth they followed her there in violation of the non-compete proviso causing damages to the plaintiff. Plaintiff states that from October 1, 1987, until February of 1988, the beauty salon only made $275 per week which was $325 less than she expected to earn. Coyle also contends that from March of 1988 to December 31, 1988, the beauty salon averaged $135 per week, which is $465 per week less than it should have been because of the actions of the defendant. Plaintiff admits that from January 1, 1989, to December 31, 1989, as a result of her continued work and advertising, she made an additional $200 more per week. However, Coyle states that she believed that she would be making $800 per week in 1989, but she only averaged $410 per week. Plaintiff also contends that she thought she would be making $1,000 per week in 1990, but she only averaged $600 per week. Plaintiff requests

a verdict in her favor in the amount of $67,970, although the original cost of the Vanity Villa Beauty Salon was only $8,500.

The general rule in Pennsylvania is that damages may be assessed for loss of profits where (1) there is evidence to establish them with reasonable certainty; (2) there is evidence to show that they were the proximate consequence of the wrong in contract actions; (3) they were reasonably foreseeable. However, Pennsylvania courts are reluctant to award lost profits "except when the business concerned is established and not 'new and untried.' Though damages for alleged lost profits can be given, they cannot be recovered where they are merely speculative." *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa. Super. 90, 464 A.2d 1243 (1983). In *Pollock v. Morelli*, 245 Pa. Super. 388, 369 A.2d 458 (1976), the court refused to allow the plaintiff to recover lost profits where the plaintiff had only been in business for nine months when the contract was breached. In the case at bar, plaintiff admits that she did not know anything about the beauty salon business, and that she went to work at the Vanity Villa Beauty Salon, without pay, for three months to learn the business. After that three-month period, plaintiff decided to purchase defendant's business. Hence, this court concludes that plaintiff's business was new and untried. "Whereas recovery for the lost profits of an established business are considered ascertainable to a reasonable degree of certainty,... when a business is new and untried, courts have declared the measure of anticipated profits too speculative to provide a basis for an award of damages." *Pollock, supra* at 397, 369 A.2d at 463.

Moreover, the Restatement of Contracts, §331 provides that "damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." While plaintiff contends that she has proven with

reasonable certainty that her damages total $67,970 through December 31, 1990, this court disagrees. The testimony offered by plaintiff to substantiate her claim was that of a shampoo lady who testified that she ran the Vanity Villa Beauty Salon for one week shortly before Doris Furtak sold the business to Barbara Coyle, and the salon made approximately $650 that week. The only other evidence offered by plaintiff was her own testimony, sans the support of any documentation, of what she "believed she would make when she purchased the business." In her findings of fact and conclusions of law, plaintiff merely contrasted monies she made against what she hoped or believed she would make based on what a shampoo lady approximated from just one week's operation. Damages are recoverable for lost profits only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. Based on the evidence adduced at trial, plaintiff's calculations are too weak to support a recovery without conjecture. An award cannot be fashioned based upon plaintiff's speculations of what she thought she would make in a new and untried business. The defendant testified that she never made representations to the plaintiff as to what she could expect to earn. Furtak had operated the Vanity Villa Beauty Salon for almost 20 years, and she testified that she did not accept appointments because her customers just came in with 90% of her business being wash and set. This type of business is a personal service and it seems fair to surmise that the clientele was allied to the previous owner rather than to plaintiff.

In support of her claim for lost profits, plaintiff cites *Aiken Industries Inc. v. Estate of Wilson,* 477 Pa. 34, 41, 383 A.2d 808, 812 (1978), wherein the Supreme Court stated that "the breach of non-competition agreements of the type with which we are here concerned necessarily involves damages which are difficult to calculate with absolute precision.... The indefiniteness consequent upon

this difficulty does not, however, by itself preclude relief." In *Aiken,* the defendant sold his business to plaintiff, and one of the terms of the transaction was that defendant would work for plaintiff and would not compete against plaintiff. The pertinent covenant provides as follows:

"Wilson recognizes that National is, and will in the future be, engaged in highly competitive businesses. During the employment period, and for any subsequent period of employment by Aiken, Wilson agrees that he will not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner, with the ownership, management, operation, or control of any business competitive with the business of National." *Aiken, supra* at 47, 383 A.2d at 815

At trial, Aiken presented convincing evidence that the defendant (1) made outright gifts of $60,000 to two of his former employees with full knowledge that this money would be used in forming a company to engage in direct competition with the plaintiff's business; (2) rented space to the two former employees and then waived the rent on the premises for the first seven months; (3) made two automobiles available to the two employees who used them in connection with their new business; and (4) donated furniture and office equipment to the two former employees and then executed a waiver of his security interest in defendant's machinery which enabled the former employees to negotiate a loan of $160,000 which they needed to purchase necessary equipment. Aiken also presented convincing evidence to show that 25 of his customers constituted 50 percent of its business prior to the defendant's financing the competitor's business, and that after the two former employees incorporated, plaintiff's business declined by one-half while the 25 customers represented 95 percent of the competitor's business. In addition, Aiken also presented the trier of fact with a statistical analysis of the percentage of lost profits which

would have constituted profit to Aiken but for defendant's breach.

*Aiken* differs substantially from the case at bar in that without any supporting documentation as to dollar figures, Coyle simply propounded to the court her anticipated earnings which were based on her working in the salon for three months without pay prior to the purchase date. According to her own testimony, plaintiff received her beauty operator's license in October 1987 and she possessed little or no beauty salon proprietorship experience before purchasing defendant's business. Plaintiff also admitted on cross-examination that she did not review any records or earning information from the defendant prior to her decision to purchase the salon. While *Aiken* was able to present the court with sufficient evidence with a great degree of specificity from which the trier of fact could establish a basis for the assessment of damages with reasonable certainty, the same is not true in the instant case. Damages in the form of lost profits cannot be based on a mere guess or speculation; the law requires that the evidence shall, with a fair degree of probability, establish a basis for the assessment of damages.

Plaintiff also asked this court to consider the case of *Ebright v. Shutter,* 254 Pa. Super. 509, 386 A.2d 66 (1978). In *Ebright,* suit was brought to enforce a non-competition covenant executed in connection with the sale of a restaurant; plaintiff purchased defendant's entire restaurant business including the real estate, equipment, liquor license and good will for a total consideration of $105,000. The seller agreed not to engage in any way, directly or indirectly, in any business competitive with buyer's business for a period of five years. Defendant then purchased another restaurant, and plaintiff sought and received injunctive relief. In addition damages in the amount of $9,812.05 were assessed against defendant. *Ebright,* however, differs from the case at bar in that in *Ebright,* the

parties placed a value on the good will and the covenant not to compete; "it is agreed that the good will covenant not to compete shall have allocated thereto a consideration of $28,383." The *Ebright* court stated: "Proof that the parties attached a particular value to the covenant not to compete for five years was competent evidence of the contractual loss appellees sustained during the time appellants operated a restaurant in competition with them; and, especially in the absence of alternative evidence of appellees' actual loss, which appellants never offered, the lower court's award should be affirmed." *Ebright, supra* at 515, 386 A.2d at 69.

In the case at bar, there was no such value placed on the good will which plaintiff contends she purchased from the defendant. In addition, the *Ebright* court granted a pro rata abatement of the consideration paid as apportioned by the parties, whereas in the instant case, plaintiff simply requests that this court enter a verdict in the amount of $69,970 for a business purchased in the amount of $8,500. As the *Ebright* court noted, "As a general rule, courts ordinarily do not grant damages in addition to specific performance, in large part because such an award would constitute an inequitable windfall for the promisee, at least where specific performance alone of the contract affords the promisee the full benefit of his bargain." *Ebright, supra* at 513, 386 A.2d at 68. This court enjoined defendant Furtak from working in a beauty salon within a one mile radius for two years and although plaintiff contends that defendant immediately breached the contract entered on September 21, 1987, this court takes special note that plaintiff did not seek to enjoin the defendant until January 1989. Hence, this court believes that the specific performance granted plaintiff is sufficient to place the parties in the position in which they would have been had the contract been performed

as contemplated. Moreover, "Pennsylvania law does not permit the recovery of damages for loss of good will or reputation in any action based on either a breach of contract, ..." except in cases like *Ebright* where the parties place a particular value on the good will in the covenant. *Eastern Dental Corp. v. Isaac Masel Co.*, 502 F. Supp. 1354 (E.D. Pa. 1980).

The plaintiff in *Pollock* "sought to show a reduction of profits by introducing an accountant who testified that the store's profits did not increase according to his projections," *Pollock, supra* at 398, 369 A.2d at 463. However, that court stated that:

"The estimation of the anticipated increase was of necessity based only on the nine months of operation preceding the construction which allegedly marked the beginning of the decline of the business. The lower court found, and we agree, that the basis for the accountant's projections and estimation of increasing profits is not established in the record. No foundation is laid for the assumption that the business would increase annually or that it would increase at the percentage the accountant estimated from the first few months of operation. Consequently, we cannot permit a recovery for lost profits." *Pollock, supra* at 398, 369 A.2d at 463.

This court takes special note that the *Pollock* court held that the plaintiff's anticipated profits were too speculative to support an award of damages or lost profits albeit the plaintiff introduced into evidence the monthly receipts of the immediate predecessor who had operated the dry cleaning business for over a year.

In the case at bar, plaintiff admits that she was a novice and knew nothing of the beauty salon business. In fact, plaintiff had just graduated from beauty school when she went to work at the Vanity Villa Beauty Salon, without pay, for three months to learn the business. However,

there was no testimony that plaintiff ever handled books or collected payments from customers which would have enabled her to form a reasonable opinion as to how much money the shop made.

Moreover, according to the testimony, defendant only had four or five steady customers during the period she worked at the competitor's salon prior to the injunction. One witness even testified that the four or five customers who did leave Vanity Villa to follow Furtak came back to Vanity Villa because the shop where defendant was working was a gay shop.

In a recent case before the 3rd Circuit, the court stated that "Where the losses cannot be allocated between those caused by the defendant's breach and those not, an entire claim may be rejected." *National Controls Corp. v. National Semiconductor Corp.,* 883 F.2d 491 (3rd Cir. 1987). That court also stated that:

"The bar to recovery of damages for loss of good will, including proof of such damages, is a matter of law in Pennsylvania, thus precluding the plaintiff from attempting to show that in his case the damages would not be speculative. Even where the plaintiff's claim truly represents a claim for lost profits, rather than loss of good will, it may be rejected as speculative and unrecoverable. This is particularly true where the claim of lost profits is made in the context of a new and untried business venture." *National at 495.*

In the instant case, to sustain an award for lost profits, the plaintiff must have provided sufficient evidence from which this court could find that plaintiff's lost profits were proximately caused by the defendant's breach. As the *National* court iterated, "the damages sought must be a proximate consequence of the breach, not merely remote or possible." *National at 496.* Thus, the burden was on plaintiff to prove that any lost profits were proxi-

mately caused by defendant's breach and not through some other cause. It appears to this court that plaintiff's lost profits can be attributed to the fact that plaintiff was not a seasoned hairdresser and, therefore, she could not expect to keep the customers who were aligned not to the beauty shop itself but, rather, to the defendant who had maintained the business for 20 years. Moreover, plaintiff did not offer evidence to establish that "but-for" Furtak's presence at Dennis and David's Beauty Salon a loss of profits would not have occurred. According to plaintiff's testimony, she only made $275 per week, and as she continued to work and advertise, she obtained new customers for her shop until in 1990 she started averaging $600 per week. The plaintiff's lost profits are more likely than not aligned to plaintiff's lack of knowledge and experience in the beauty salon business. As the *National* court stated, those losses which cannot be allocated between those caused by a defendant's breach and those caused by the plaintiff in a new untried business are rejected. The handwritten calculations by plaintiff to estimate what she believed her profits should have been were not established in the record, and the plaintiff was unable to prove that defendant's breach was a substantial factor in her inability to make what she hoped for.

For all of the foregoing reasons, this court found that the plaintiff's business was new and untried, that there was no evidence introduced whereby this court could form a sufficient basis for estimating with reasonable certainty the amount of plaintiff's lost anticipated profits and, given the evidence proffered by the plaintiff the lost profits were not the proximate consequence of the breach but, rather, are attributable to plaintiff's unfamiliarity with the business. Hence, this court found for the defendant and against plaintiff.