688 A.2d 715

SCOBELL INC., Appellee,

v.

Fred H. SCHADE Sr., Appellant (at 433).

SCOBELL INC., Appellant (at 471),

v.

Fred H. SCHADE Sr., Appellee.

Superior Court of Pennsylvania.

Argued Oct. 3, 1996.

Filed Jan. 28, 1997.

Eugene J. Brew, Jr., Erie, for Schade.

Frank L. Kroto, Jr., Erie, for Scobell.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

KELLY, Judge.

In this consolidated appeal, we are asked to determine whether the record evidence supports an award of damages for lost profits which must be ascertained with reasonable certainty upon a former employee's breach of a covenant not to compete. We hold that in this case the evidence does not support a portion of the damages awarded by the trial court. Accordingly, we affirm in part and modify in part.

The salient facts and procedural history underlying this appeal are as follows. In August of 1989, Scobell, Inc. ("Scobell") was in the heating, ventilating, and air conditioning (HVAC) business, but did not operate its own sheet metal

shop. At the same time, Fred H. Schade, Sr. ("Mr. Schade") was the owner and operator of a sheet metal shop that had specialized in HVAC work for approximately thirty-two years. The two parties began negotiations that resulted in the sale of Mr. Schade's business assets to Scobell for $120,000.00. On September 12, 1989, the parties executed a four-part written agreement which incorporated a purchase and sale agreement, an employment agreement, a real estate lease agreement, and a non-competition agreement. The parties agreed that Mr. Schade would continue to run the sheet metal shop as an employee of Scobell for a period of two years, that Scobell would lease the shop space in the building owned by the Schades for a period of one year and three and one-half months, and that Mr. Schade, as seller, would not compete directly or indirectly with Scobell's business for a period of three years.

Mr. Schade began his employment with Scobell on September 13, 1989. In June or July of 1990, Mr. Johannes, President of Scobell, noticed that Mr. Schade's sheet metal shop was losing money. (N.T. 2/23/95A at 53).[1] Mr. Johannes determined that the proper action to take was to move the sheet metal shop across town and into the building with the other Scobell departments where he could keep a closer eye on Mr. Schade's operations. (*Id.*). Although Mr. Schade participated in executing this move, he expressed his desire to leave Scobell's employ in January, 1991. Mr. Johannes agreed to release Mr. Schade from the employment contract, but he refused to release Mr. Schade from the covenant not to compete.

Mr. Schade left Scobell's employ on February 14, 1991, with nineteen months remaining on the non-competition agreement and shortly thereafter began working for A.W. Farrell Company ("Farrell"). Mr. Schade developed a sheet metal department for Farrell and bid for work in Erie County. Farrell did

1. The testimony given on February 23, 1995, was transcribed in two parts, with Mr. Johannes' testimony in one transcript and all other testimony in a second transcript. To avoid confusion, the transcripts will be referred to herein as 2/23/95A and 2/23/95B, respectively.

not have the capacity to compete in this business until Mr. Schade's arrival. (N.T. 2/23/95B at 27–28, 52, 57, 72). Farrell also bid work as a sub-subcontractor for Mainline Mechanical Contractors ("Mainline"), a separate business entity that sometimes served as a subcontractor to general contractors in the area.

On May 31, 1991, Scobell filed an action in equity seeking a preliminary injunction to prevent Mr. Schade from violating the parties' non-competition agreement. The Honorable George Levin denied the motion for a preliminary injunction, but reserved judgment on the merits of the legal action, by order entered June 7, 1991. Judge Levin also denied Scobell's motion for summary judgment filed on March 18, 1993, by order entered on April 27, 1993. The Honorable Michael T. Joyce transferred the case from the equity court to the law court by order entered July 15, 1993.

Judge Joyce presided over the nonjury trial on February 23 and 24, 1995, during which both parties presented testimony on Mr. Schade's alleged breach of the non-competition agreement and the resulting damages to Scobell. On September 6, 1995, Judge Joyce filed the court's findings of fact and conclusions of law, holding that Mr. Schade's employment with "Farrell/Mainline" constituted a breach of Mr. Schade's covenant not to compete with Scobell and awarding judgment in favor of Scobell in the amount of $68,467.00 plus interest and costs. Mr. Schade filed his motion for post-trial relief on September 14, 1995.

By order entered on February 15, 1996, Judge Joyce amended the court's findings of fact and conclusions of law and reduced judgment in favor of Scobell to $57,300.00 plus interest and costs. The trial court held that only those job contracts awarded to "Farrell/Mainline" based on bids submitted by Mr. Schade and for which Scobell's bid was the second lowest could be used in the calculation of damages. The trial court then determined that "Farrell/Mainline" received job contracts based on two bids made by Mr. Schade, one for $325,000.00 and the other for $75,000.00. The court assigned a ten percent profit margin and, consequently, awarded dam-

ages of $40,500.00 to Scobell based on lost profits for competitive bid work. Additionally, the court awarded $13,050.00 and $3,750.00 in damages based on a fifteen percent profit margin for service work and walk-in business, respectively, attributable to Mr. Schade's breach of the non-competition agreement. Mr. Schade filed an appeal on February 28, 1996, and Scobell filed a cross-appeal on March 6, 1996. This Court consolidated the appeals on March 18, 1996.

On appeal, Scobell raises the following issue for our review: WHETHER THE TRIAL COURT ERRED BY REQUIRING THE PLAINTIFF TO PROVE DAMAGES RESULTING FROM THE DEFENDANT'S BREACH OF A COVENANT NOT TO COMPETE WITH MATHEMATICAL CERTAINTY.

(Scobell's Brief at 3).

In his appeal, Mr. Schade sets forth the following claims for our review:

1. SHOULD A FORMER EMPLOYER BE AWARDED DAMAGES FOR VIOLATION OF AN AGREEMENT NOT-TO-COMPETE AGAINST A FORMER EMPLOYEE, WHEN THE FORMER EMPLOYER FAILS TO PROVE THAT ANY CONTRACTS OR SALES WERE OBTAINED BY THE FORMER EMPLOYEE THAT WOULD HAVE BEEN OBTAINED BY THE FORMER EMPLOYER, HAD THERE BEEN NO VIOLATION OF THE NON-COMPETE AGREEMENT?

2. DID THE LOWER COURT PROPERLY ELIMINATE ITEMS OF DAMAGE WHERE THERE WAS INSUFFICIENT PROOF SUBMITTED OF LOSS OF BUSINESS BY THE EMPLOYER CAUSED BY THE COMPETITION OF THE FORMER EMPLOYEE?

(Mr. Schade's Brief at 3).

Because the analysis of all three issues involves a legal determination of whether Scobell met the required standard of proof to sustain the trial court's award of damages, we will

address the questions together. Our standard of review is well settled:

> [T]he findings of a trial court sitting without a jury have the same force and effect on appeal as a jury's verdict. *Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58 (1989); *Piccinini v. Teachers Protective Mutual Life Insurance Co.*, 316 Pa.Super. 519, 463 A.2d 1017 (1983); *Slaseman v. Myers*, 309 Pa.Super. 537, 455 A.2d 1213 (1983). We will reverse the trial court only if its findings are predicated upon an error of law or are unsupported by competent evidence in the record. *Id.* On review, it is not within our province to find facts or to substitute our judgment for that of the trial court. *Rizzo v. Haines, supra.* Moreover, the trial court is free to believe all, part, or none of the evidence that is presented, to make all credibility determinations, and to resolve any conflicts in the evidence. *Gemini Equipment v. Pennsy Supply*, 407 Pa.Super. 404, 411, 595 A.2d 1211, 1214 (1991) (citations omitted).

*Hodges v. Rodriguez*, 435 Pa.Super. 360, 366, 645 A.2d 1340, 1343 (1994). *Accord C.R. by Dunn v. The Travelers*, 426 Pa.Super. 92, 98–99, 626 A.2d 588, 592 (1993).

Instantly, the parties do not contest the trial court's holding that Mr. Schade breached the covenant not to compete when he set up a sheet metal shop for Farrell and began competing for work in Erie County, Pennsylvania. The parties disagree, however, on whether the trial court applied the correct standard of proof for calculating the resultant damages and whether sufficient evidence was presented to sustain the damages awarded.

▮ At the outset, we note that a covenant not to compete which is ancillary to a contract for the sale of a business is subjected to a less rigorous reasonableness examination than those ancillary to an employment contract. *Worldwide Auditing Services, Inc. v. Richter*, 402 Pa.Super. 584, 592–93, 587 A.2d 772, 777 (1991) (citation omitted); *Sobers v. Shannon Optical Company, Inc.*, 326 Pa.Super. 170, 175, 473 A.2d 1035, 1038 (1984) (citations omitted). A buy-sell restrictive covenant

is enforceable if it is designed to protect the legitimate interests of the purchaser of the business. *Geisinger Clinic v. DiCuccio,* 414 Pa.Super. 85, 103, 606 A.2d 509, 518 (1992), *allocatur denied,* 536 Pa. 625, 637 A.2d 285 (1993), *cert. denied,* 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 788 (1995) (citation omitted).

> Specifically, restrictive covenants ancillary to the sale of a business, as here, are designed to protect, in addition to physical assets and investments, the good will of the business, i.e. its name, reputation and reliability. For that reason, a restrictive covenant ancillary to the sale of a business promotes "goodwill [as] a saleable asset 'by protecting the buyer in the enjoyment of that for which he pays.'" It is the interference with or the destruction of the good will purchased with the physical attributes of the business which is unascertainable and unquantifiable in terms of actual loss....

*Id.* (citations omitted). Therefore, "damages arising out of a breach of a covenant not to compete are difficult to compute with precision." *Worldwide Auditing Services v. Richter, supra* at 594, 587 A.2d at 777 (citing *Aiken Industries, Inc. v. Estate of Wilson,* 477 Pa. 34, 41, 383 A.2d 808, 811–12 (1978)(plurality), *cert. denied,* 439 U.S. 877, 99 S.Ct. 216, 58 L.Ed.2d 191 (1978)). It is also well established, however, that an award of damages cannot be based upon mere guess or speculation. *Aiken Industries v. Estate of Wilson, supra.*

> Though any breach of contract entitles the injured party at least to nominal damages, he cannot recover more without establishing a basis for an inference of fact that he has been actually damaged. A mere possibility that the plaintiff might have made a profit if the defendant had kept his contract will not justify damages based on the assumption that the profit would have been made.

*Id.* Because damages in the nature of lost profits are difficult to establish with mathematical certainty, only reasonable certainty will be required. *Sobers v. Shannon Optical Company, supra* at 177, 473 A.2d at 1039 (quoting *Ebright v. Shutter,* 254 Pa.Super. 509, 515, 386 A.2d 66, 69 (1978)(*en banc* )). "Often

the reasonable certainty required may be fulfilled by looking to a restitutionary measure of damages." *Id.*

■ Instantly, Scobell argues that the trial court should have awarded damages based on competitive bid business Scobell may have gotten had Mr. Schade still been working for Scobell. Therefore, according to Scobell, any sheet metal work Mr. Schade bid for on behalf of Farrell, whether or not Farrell actually won the contract or whether or not Scobell submitted a bid, should have been included in the calculation of damages. Scobell proffers that the method utilized by the trial court required Scobell to prove its damages with mathematical certainty. Scobell complains "not only have the Pennsylvania courts not required plaintiffs to prove lost profits with mathematical certainty in a case involving a breach of a covenant not to compete, they have awarded damages without any proof of lost profits." (Scobell's Brief at 12). In support of its claim, Scobell relies on *Ebright v. Shutter, supra,* and *Sobers v. Shannon Optical Company, supra.* In both of those cases, this Court awarded damages for breach of a covenant not to compete based on the specific value placed upon the covenant by the parties in their contracts and determined that proof of lost profits was not required.

In this case, however, the parties did not assign a specific value for the covenant in their contract. As Scobell drafted the contract executed by the parties, it cannot be heard to complain now that it must bear the burden of proving lost profits with reasonable certainty. In addition, Scobell's formula for calculating damages is based upon the incorrect premise that Mr. Schade was required to remain in Scobell's employ under the covenant not to compete. Although the contract contained a two-year employment agreement, Mr. Johannes, President of Scobell, released Mr. Schade from that agreement in January of 1991. If Mr. Schade had simply retired or gone to work in a different field, Scobell would still have had to submit bids in order to win competitive bid contracts. Hence, there can be no competition if Scobell did not submit a bid, and damages should not be awarded on

contracts Mr. Schade received on behalf of Farrell for which Scobell did not bid.

Instead, the proper measure of damages, as determined by the trial court, is to ascertain what contracts Farrell won because Mr. Schade worked for them and competed against Scobell. (*See* N.T. 2/23/95A at 28–31). Mr. Schade concedes that Farrell did not have the capacity to do sheet metal work in Erie County prior to Mr. Schade's arrival. Thus, any sheet metal work that Farrell subsequently completed in competition with Scobell during the nineteen months remaining on the covenant must be included in the calculation of damages. The next step then, assuming that Farrell was unable to compete, is to determine which jobs Scobell would have received as lowest bidder. Scobell has the burden of proving those damages with reasonable certainty. *See Sobers v. Shannon Optical Company, supra.*

The trial court concluded that damages could be awarded with reasonable certainty on those competitive bid jobs where Farrell won the bid and Scobell came in second. We hold that the trial court applied the proper method to establish damages with reasonable certainty. We also uphold the trial court's award of damages based on service calls and walk-in business attributable to Mr. Schade's breach of the covenant not to compete. We disagree with the trial court, however, that Scobell presented sufficient evidence to support the amount awarded on competitive bid projects.

At trial, no evidence was presented to support the trial court's finding that "Farrell's newly formed HVAC and sheet metal department ... operated under the name Mainline." (Trial Court Findings of Fact, filed 9/6/96, para. 10. *See also id.* at para. 11, 13, 14, 17, 21 and Conclusion of Law at para 2 (referring to entity in competition with Scobell as "Farrell/Mainline")). In addition, Scobell failed to present sufficient evidence to support a finding that Mr. Schade's employment at Farrell enabled Mainline, a separate and distinct subcontractor, to compete in bid work against Scobell. The trial court, however, awarded damages for two projects that Farrell worked on in conjunction with Mainline, the G.E. 44L

project and LEIR Hospital. The trial court based its award of $32,500.00 in damages to Scobell on a $325,000.00 bid submitted by and awarded to Mainline for HVAC work as subcontractor to general contractor E.E. Austin and Son, Inc. on the G.E. 44L project. Mr. Schade's bid to Mainline on behalf of Farrell as sub-subcontractor for the sheet metal work, however, was for $29,000.00. (Defendant's Proposed Findings of Fact and Conclusions of Law, filed 3/4/96, at 3).

Because the evidence supports a finding that Mr. Schade competed against Scobell through Farrell and not through Mainline, we conclude that the proper amount from which to calculate damages is the Farrell bid of $29,000.00. Applying the ten percent profit margin employed by the trial court results in lost profits to Scobell of $2,900.00 on the G.E. 44L project.

■ Furthermore, we conclude that Scobell failed to present sufficient evidence to support the trial court's award of damages for the LEIR Hospital project. At trial, Mr. Johannes testified on behalf of Scobell that LEIR Hospital was one of the projects Mr. Schade worked on for Farrell. Although Mr. Johannes testified that Scobell bid on the project, he did not know the amount of the bid submitted or whether or not Scobell's bid was second lowest to Mr. Schade's bid on behalf of Farrell.[2] Scobell presented no other evidence in furtherance of its claim for damages based on Mr. Schade's competi-

---

2. During Mr. Johannes direct examination testimony at trial, the following exchange transpired:

Q. Let's continue on our list then. We have the next one that Fred mentioned this morning which is the LEIR Hospital. You have LEIR also on your exhibit Number 11. Did you bid LEIR?
A. Yes.
Q. And what was your bid on that?
A. I don't remember what the actual dollar value was.
Q. But You're second?
A. Yes, I was—I did the first phase of LEIR and then Fred did this phase with Main Line. And evidently he did another one too that I didn't know about because he mentioned he did two jobs at LEIR.
Q. Okay. On our Exhibit 11 that says LEIR Hospital, Main Line Mechanical and A.W. Farrell, $78,000, where did you get that number?
A. From the general contractor, I think, that did the job.

tion through Farrell on the LEIR Hospital project. Hence, based on the record before us, the award of damages assessed on lost profit for the LEIR Hospital project is unsupported by competent evidence in the record. *See Hodges v. Rodriguez, supra; C.R. by Dunn v. The Travelers, supra.*

For the foregoing reasons, we are constrained to modify that portion of the trial court's February 15, 1996 order awarding damages for competitive bid work. Accordingly, we reduce the amount awarded on competitive bid work from $40,500.00 to $2,900.00, for a total award of $19,700.00 in damages to Scobell due to Mr. Schade's breach of the covenant not to compete.

Q. Okay. And then you say you were second?
A. I could have been second. I wasn't sure of that.
MR. BREW: Your Honor, I just don't know, I don't know how he knows who the bidders were.
THE WITNESS: Who, me?
MR. KROTO: Fred said this morning.
MR. BREW: Exhibit 11 is a letter from the witness to the lawyer, Your Honor.
MR. KROTO: I asked him.
MR. BREW: That's all we have is he's testifying from a letter that he's written to his own lawyer. I mean, I just object at this point.
THE WITNESS: I got the dollar figure, if I remember right, from Eriez Construction.
MR. KROTO: I think Fred, this morning, said he got that job.
THE WITNESS: He said he got two jobs at LEIR.
MR. BREW: I appreciate it's important who the bidders were.
THE COURT: What's important is the monetary amount bid by each bidder, and, again, it's the proof issue, who bid.
MR. KROTO: That's why I had all these fellows come in this morning.
THE COURT: Do you have someone coming in from Eriez?
MR. KROTO: I don't yet. I don't yet but I probably can.
MR. BREW: We don't even have a letter. Maybe if we had a letter we can stipulate. There's nothing, there's no document at all.
THE COURT: I think you need that, Frank. I go along with your proposition there's difficulty in formulating what the actual loss is but there's no difficulty in establishing who got the bid or what amount and who bid second and what the difference is.
MR. KROTO: There's no question. Hadn't I gotten the answers I did this morning I wouldn't even have gotten these fellows today. You don't know who you have to call. But it's a very legitimate objection, I understand it.
THE COURT: All right.
MR. KROTO: I understand.
(N.T. 2/23/95A at 39–42).

426

Order affirmed in part and modified in part. Jurisdiction relinquished.