## RAPP *v.* RAPP.

Where a testator, after having made ample provision for his widow, directed his real estate to be rented out until his youngest child should arrive at the age of twenty-one years, when it should be appraised and accepted, or sold, the whole to be equally divided between his eight children; and "*that in case any of his children should die unmarried and without lawful issue, the share or portion of him or her so dying, shall revert back to the survivors, share and share alike;*" it was *held*, that this was good as an executory devise, and that the limitation over was not too remote.

The words used in a release are not to be extended beyond the consideration for which it was given.

A release of a legacy given in a will, though it be in full of all demands, from the beginning of the world to the day of its date, will not discharge a claim of the releasors

against the estate of the testator, which did not exist at the time the release was given.

It is error to leave the construction of a release to the jury.

In error to the Court of Common Pleas of Berks county.

*June* 15. Peter Shearer, administrator *de bonis non*, with the will annexed, of Frederick Rapp, the plaintiff below and defendant in error, brought this action to recover from the executors of John Rapp, plaintiffs in error, and defendants below, the amount of the legacy or share bequeathed to him by his father, Frederick Rapp, deceased, being the one-eighth part of the estate of the said Frederick Rapp.

The facts of the case upon which a recovery was sought in the court below, were these: On the 10th of December, 1803, Frederick Rapp made his will, and died in 1812, leaving a widow and eight children. The testator provided in his will, that his widow should have the house in which he lived, so long as she remained his widow. He also authorized her to retain as much of the furniture as she considered necessary, and directed his executors to pay over to her yearly, the sum of fifty dollars, &c., and to sell the remainder of his personal property. He then directed his real estate to be rented out by his executors, until his youngest child attained the age of twenty-one years, when it was to be appraised, accepted, or sold; and that the appraised value thereof, if accepted, or the proceeds, if sold, together with the proceeds of sale of his personal property, should be equally divided amongst all his children. After the death of the widow, the house was to be sold, and the proceeds to be equally divided as above stated. The will also contained a clause, that in case any of his children died unmarried, and without lawful issue, the share or portion of him or her, so dying, should revert back to the survivors, share and share alike; and upon this clause the present controversy arose. Peter and John, the sons of the testator, were appointed the executors of his will. Peter died before the testator, and John proved the will and settled the estate. Shortly after the death of the testator, the children and legatees who were of age, and the guardians of those under age, entered into an agreement with the executor, authorizing a compromise or arrangement with the widow. In pursuance of this agreement, an arrangement was effected; and the executor, with the consent of the widow and legatees, disposed of all the property, placed upon interest *one thousand pounds*, and gave the widow a bond with sureties, to pay her the interest thereof during her life.

In 1813, the executor filed his account, which embraced the whole of the estate, real and personal, except £1000, as above stated. The account exhibited a balance of £3730, 15s. 5d. in favour of the estate, which the executor, after deducting his own share, paid over to the legatees, and took releases from them. The interest of the £1000 was paid yearly to the widow, until her death in 1830, when the principal was again divided amongst the legatees and their heirs. At the death of John Rapp, the executor, in 1842, unmarried and without issue, all the children and legatees of Frederick Rapp were dead except two, viz., Catharine Miller and Elizabeth Haberacker, a daughter and legatee of Frederick Rapp, and the wife of John Haberacker. Haberacker and wife gave the executor two releases, one of which was dated December 30, 1814, and the other, February 16, 1830, after the death of the widow. The substance of these releases are so clearly stated in the opinion of this court, as to render it unnecessary to refer to them here. John Rapp, the executor of Frederick Rapp, left a will, in which he appointed Jacob Sauerbier and William Lutz his executors. After his death, in 1842, letters of administration, *de bonis non*, with the will annexed, of Frederick Rapp, were granted to Peter Shearer, the plaintiff in this suit.

His honor, Judge BANKS, charged the jury as follows: ·

" The defendant's testator died unmarried and without issue. In that case, under the will of Frederick Rapp, the money in controversy was not vested in the defendant's testator, nor would it pass by his will to those who claim it. It reverted to others; and the plaintiffs are entitled to a verdict, unless some other defence prevents it.

" The defendants have given in evidence certain releases, which they contend discharge them, and the estate of their testator, from this claim. If the releases which have been given in evidence, or any of them, were given in discharge of the claim put forward in this action, then the plaintiffs could not recover. It is a fact which is submitted by the court to you to determine, what each release was given for. If no one of these was given for the debt, the plaintiff would be entitled to a verdict. If they, or any one of them, were given in discharge of this claim, then the plaintiffs could not recover, and your verdict must be for the defendants.

" To this charge the defendant's counsel excepted."

The charge of the court was assigned for error.

Two questions were raised on the argument here: 1st. Was the limitation over, under the will of Frederick Rapp, good, or too

remote ?    2d. Were the releases given by Haberacker and wife a bar to the recovery of the plaintiffs below ?    It was also urged as error, that the court submitted the construction of the releases to the jury.

*Hoffman* and *Jones*, for plaintiff in error, argued, that under the construction which must be given to the will of Frederick Rapp, the plaintiffs below were not entitled to recover.    The testator had in view the circumstances of his family; and in giving a construction to the will, this important fact was to be borne in mind.    The share or portion which any of his children was entitled to under his will, was, in the event of his or her death, to be equally divided amongst the survivors.    The questions are, whether the money in controversy went to the legatees under the will of John Rapp, or reverted, or was limited over to others under the will of Frederick Rapp ?    Was the limitation over under the will of Frederick Rapp good, or was it too remote ?    They contended that it was too remote, and cited Straub's Appeal, 1 Barr, 86; Train *v.* Fisher, 15 Serg. & Rawle, 145; Beauclerk *v.* Dormer, 2 Atk. C. R. 308. The intention of the testator cannot be carried into effect, because there is an indefinite dying without issue.    If it could have been carried into effect, it was defeated by a departure from the will, entering into an agreement and giving releases.    Interests in remainder of personal property secured by the act of 24th Feb., 1834, Dunlap's Dig. 519, sec. 49.    The releases given were a bar to the recovery of the plaintiffs below.    Limitation over too remote; Co. Litt. 265 A.

*Strong*, contrā.—Is the limitation over good, or too remote, one of the questions in this case ?    The property given or bequeathed is personal.    The words " *dying without issue*," generally mean an indefinite failure of issue.    Yet in cases of personal property, any words will be seized hold of to confine them to dying without issue at the time of the testator's decease.    The word " *survivors*" here means survivors of his children; Diehl *v.* King, 6 Serg. & Rawle, 29.    The share of him or her dying could not be divided amongst children, unless the failure of issue should occur during a life or lives in being.    In Jackson *v.* Staats, there were eleven children; and the words of the will were, " and if any one or more happens to die without heirs, then his or their parts or shares shall be equally divided amongst the rest of the children;" held, that the devise over was good both as to real and personal estate. If any of my children die under age, and without lawful issue, the

share of the deceased shall go equally among the survivors. Held good both of real and personal estate; Doe *v.* Stopford, 5 East, 501; Fosdyck *v.* Cornell, 1 Johns. 444; Moffat *v.* Strong, 10 Johns. 16, 17; Mifflin *v.* Neal, 6 Serg. & Rawle, 460; Hopkins *v.* Jones, 2 Barr, 68; De Haas *v.* Bunn, 2 Barr, 335. Second error, as to the effect of the releases, which the court referred to the jury. There was no request for specific directions. No right passes by a release, but that which the releasor had at the time; 4 Mass. 680. Release does not extinguish future rights or claims; 4 Pick. 365, 368; 7 Mass. 153; 15 Mass. 106. Releases are to be directed to particular demands, though general, where consideration, or recital, or circumstances, show that the particular demand was only in contemplation; Lyman *v.* Clarke, 9 Mass. 235; 1 Cow. 122; 5 Barn. & Ald. 606; Kirby *v.* Kirby, 6 Johns. Ch. Ca. 251, 252; 1 Ed. Ch. R. 34; 1 Ves. 503; 2 Ves. 304.

*June* 21. BURNSIDE, J.—I am not aware that any case, ancient or modern, can be found, where the limitation over was held to be too remote when the person was in being at the time of the death of the testator. See Powel on Dev. 406.

1. The first question presented in this case, was, whether under the devise over of Frederick Rapp, in case any of his children should die unmarried and without lawful issue, the share or portion of him or her so dying, should revert back to the survivors, share and share alike. This question is decided in Diehl et al. *v.* King et al., 6 Serg. & Rawle, 29, where it was held, that the devise to Henry King, a grandson, "and to his heirs and assigns; nevertheless, if the said Henry King should die unmarried and without issue, that then, in such case, the bequest was to be equally divided to and among all his children," that the limitation over of the legacy, being to take effect on the failure of issue at the death of the first taker, was good, and vested the legacy in the children of the testator. "Money," says Duncan, J., "may be the subject of an executory devise; but, such an executory devise after an indefinite failure of issue would be void, the contingency being more remote than the law allows; but restricted to the time of the death of the first taker, it is good." 6 Serg. & Rawle, 31; Scott *v.* Price, 2 Serg. & Rawle, 59.

In Forsdell *v.* Cornell, 1 Johns. Rep. 439, it was held, that where a testator by his last will and testament, after charging his estate (as in this case) with the payment of his debts, providing for his wife, &c., devises his real estate to his four sons and a daughter, and then

added : " my mind and will is, that if either of my sons, William, Jacob, Thomas, or John, or my daughter Mary, shall happen to die without heirs male of their own bodies, that these lands shall return to the survivors, to be equally divided between them," that these words did not create an estate-tail, but a limitation over in fee to the survivors, on the failure of male heirs.

In Roe *v.* Jeffery, 7 Term Rep. 589, the devise was to T. F. and his heirs for ever ; but in case he should depart this life and have no issue, then to E. A. and P., or the survivor or survivors of them, " to be equally divided *betwixt* them, share and share alike." This was held good as an executory devise ; for the testator must.have meant the devise over on failure of issue living at the death of the first taker. I deem it unnecessary to pursue this subject further. The case is fully settled. At Frederick Rapp's death, he had eight children. He made ample provision for his widow. Then, his real estate to be put to rent until his youngest child attained to lawful age, when it should be appraised, accepted, or sold ; the whole to be equally divided. Then came the clause, " that in case any of the children should die unmarried, and without lawful issue, the share or portion of him or her so dying should revert back to the survivors, share and share alike." This is good as an executory devise, and is not too remote.

2. Another question is presented, which embraces the second error assigned : " that the court erred in the construction of the releases given in evidence, and in referring their construction to the jury." The heirs being of age in 1813, they made provision for their mother, and made a division of the estate. John Haberacker had intermarried with Elizabeth, a daughter and legatee of Frederick Rapp. The releases are executed by Haberacker and wife, to John Rapp, the executor, reciting in substance the will, and that John Rapp was about to account for the estate, real and personal, of the deceased ; that their part was paid, £228, 3s. 1½d., which was all the estate, except their proportionable part of £1000, set apart for the widow.

The second release recited the widow's death, and that John Rapp, the surviving executor, had paid them \$321 26½, their proportion of the £1000. Both the releases were formally drawn, releasing John Rapp, in the fullest manner, from all bequests in the will, and the latter one releasing from the beginning of the world to that day, from all claims and demands touching their legacies in the will of the deceased.

The plaintiff in error insists that these releases discharged John

Rapp from this claim, although when the releases were executed, John Rapp was in full life, and this claim did not exist, nor did it arise until after his death. .

The law is, that the words used in a release ought never to be extended beyond the consideration; otherwise it would make a release to the parties, what they never intended or contemplated. This is illustrated with Massachusetts acuteness in Lyman *v.* Clark, 9 Mass. Rep. 238, where the court held, that A. having a demand on an executor for a legacy for £50, and also another demand for $25, being her distribution share of a legacy given to her deceased sister, executed a release with the others entitled to a like distribution share, in which, after reciting that they had received of the executor $25 each, " as our proportion," they acquit and discharge the executor from all demands on him, *in virtue of the will;* that the release had no other operation than to discharge the executor of the particular demand mentioned, and that A. was still entitled to the legacy of £50.

These releases had no reference or application to this demand. It was not then in existence. Haberacker and wife released, specifically, all claim they *then* had on the executor. This claim arose after the executor's death, under. the will of the wife's father. I agree, the judge ought not to have left the construction of these releases to the jury; but ought to have instructed the jury that they had no application to the case then before the court, and were no bar to the plaintiff's right to recover. But the case did not turn on these releases, and the plaintiffs in error have no right to complain of a charge that was more favourable to their case, than it deserved.

Judgment affirmed.