Larry **BICKINGS**, Plaintiff,

v.

**BETHLEHEM LUKENS PLATE,**
a division of Bethlehem Steel
Corporation, Defendant.

No. Civ.A. 99–1530.

United States District Court,
E.D. Pennsylvania.

Jan. 31, 2000.

Hyman Lovitz, Lovitz & Gold, Philadelphia, PA, for plaintiff.

Randolph Stuart Sergent, Maria E. Rodriguez, G. Stewart Webb, Venable, Boejer & Howart, Baltimore, MD, Kathleen M. Mills, Bethlehem Steel Corp., Bethlehem, PA, for defendant.

## MEMORANDUM & ORDER

ANITA B. BRODY, District Judge.

Before me is defendant's motion for partial summary judgment (Docket Entry

# 9). The parties entered into a stipulation on June 8, 1999 (Docket Entry # 8) that provided for (1) the instant initial motion for partial summary judgment, and (2) a stay of discovery until the resolution of this motion.[1] Although the briefs reflect that there is no dispute as to the material facts, I will state the facts most favorable to the plaintiff as the non-moving party. I will grant defendant's motion for partial summary judgment.

### Facts

On June 25, 1979, plaintiff Larry Bickings was hired as a Maintenance Mechanic by defendant Bethlehem Lukens Plate ("Lukens"). Bickings was employed by Lukens until March 7, 1985, when he voluntarily quit his employment. On September 28, 1987, Bickings was rehired by Lukens as a Machinist.

On April 28, 1996, Bickings suffered a heart attack and took a leave of absence from his job at Lukens until June 3, 1996. During Bickings's leave of absence, Lukens implemented a planned reduction in its workforce and eliminated certain jobs. Bickings's job was one of those eliminated under the planned employment reduction. Bickings was notified of the layoff on June 3, 1996. The effective date of his termination was June 17, 1996. At the time of his termination, Bickings had a salaried position as a Lead Order Planner in the Maintenance Planning Department at Lukens's facility in Coatesville, Pennsylvania.

When Bickings was notified of the termination on June 3, 1996, Lukens offered him a severance package that included a severance payment. One requirement of receiving the severance package was that Bickings sign a General Release Agreement ("Release"). The Release provided in pertinent part:

I, Larry R. Bickings, ... for and in consideration of the severance benefits described in the foregoing Lukens 1996 Severance Pay Offer for Selected Employees ("the Severance Pay Offer") and other good and valuable consideration, do hereby state that:

1. I agree to and accept the terms of the Severance Pay Offer.

2. I hereby elect one of the following four irrevocable payment options below ...

a. Payment in a lump sum on the next regularly scheduled payday after the effective date of this General Release Agreement; ....

3. I waive, release and forever discharge Lukens Inc., ... of and from any and all claims, causes of action, suits, damages, wages, debts, obligations, attorneys' fees, costs and all other liabilities of any kind or description whatsoever, either at law or in equity, whether known or unknown, whether suspected or unsuspected, including without limitation, any and all claims for breach of contract, discrimination based on race, religion, sex, age, color, sexual harassment, handicap and/or disability, national origin, retaliation, or otherwise (including any claim under the Federal Age Discrimination in Employment Act, Title VII of the Civil Rights Act, the Americans with Disabilities Act, the National Labor relations Act and the Pennsylvania Human Relations Act), or any other claim based on my employment or the termination thereof that I ever had, now have or may have or claim to have in the future against [Lukens] for or by reason or any cause, matter or event whatsoever, from the beginning of time to the date of this General Release Agreement and I covenant not to file a lawsuit to assert *any such claims* ...

Def.Br. Ex. 6, Release, ¶ 1–3. The Release provides one exception: "provided, however, that this release shall not apply to benefits payable under the terms of any

---

1. The parties agree that all the discovery necessary for the resolution of this issue is as of record. *See* Tr. of Telephone Conference, January 28, 2000.

employee benefit plan within the meaning of ERISA maintained by the Company, except that it shall apply to any severance benefits." *Id.*

Lukens gave Bickings 45 days to review the severance package and the Release. In addition, Lukens permitted its newly-terminated employees, including Bickings, to apply for new positions within Lukens for six months after termination. Only current Lukens employees and the newly-terminated employees were allowed to apply for these positions.

On June 4, 1996, Bickings applied for the position of Machine Shop Planner. In applying for this position, Bickings used the internal application form used by Lukens employees. *See* Def.Br., Ex. 4. At the interview for this position, agents of Lukens asked Bickings about his health and disability and whether he would suffer any future medical impairments as a result of his disability. *See* Compl., ¶ 15. After the interview, Bickings was told that he interviewed "well" for the position. *See* Pl.Br., Ex. A, Bickings Aff.¶ 4.

On July 11, 1996, Bickings was notified by Lukens in writing that he was not selected for the Machine Shop Planner position. The letter stated that interviewers had rated him "acceptable" or "more than acceptable" in some competencies. *See* Pl.Br., Ex. B. When Bickings inquired about who had been selected for the position, a Lukens representative told him that it was "someone more qualified than you." *See* Tr. of Telephone Conference, January 28, 2000. On July 22, 1996, Bickings accepted the severance package offered by Lukens and selected to receive payment in a lump sum. As required by the severance agreement, Bickings also executed the Release on July 22, 1996. In August 1996, Bickings learned that an active Lukens employee, who had no supervisory experience, was selected for the Machine Shop Planner position.

On March 26, 1999, Bickings brought claims against Lukens alleging discrimination in failing to rehire him based on his disability, in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Lukens moves for partial summary judgment, on the basis that Bickings waived all claims against Lukens by executing the Release. Bickings opposes the motion on the basis that (1) the Release bars only claims that arise out of his employment with Lukens, and that the failure to rehire claim does not arise out of his employment, and (2) the Release does not bar his claims because his actions accrued after the Release was executed. Both parties agree that (1) the Release is enforceable, and (2) in construing the Release, Pennsylvania law applies. *See* Def. Br. at 8; Pl. Br. at 9.

### Applicable Law

Under Pennsylvania law, general releases are interpreted by the rules of contract construction. *See, e.g., Evans v. Marks,* 421 Pa. 146, 218 A.2d 802 (1966); *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885 (3d Cir.1975). In construing a release, the foremost consideration is the intention of the parties. *See, Three Rivers Motors,* 522 F.2d at 892. The intention of the parties is gathered from (1) the language of the release and (2) the circumstances surrounding the execution of the release. *See, e.g., Wenger v. Ziegler,* 424 Pa. 268, 271, 226 A.2d 653 (1967).

First, a court must look to the language of the release. In examining the language of a release, the terms of the release will be given their ordinary meaning unless a different meaning was clearly intended. *See id.* In addition, the language of the release must be viewed in the context of the entire document. *See, e.g., Harrity v. Medical College of Pennsylvania Hosp.,* 439 Pa.Super. 10, 21, 653 A.2d 5 (1994). Each part of the release must be given effect. *See id.* Therefore, terms in one section of the contract should not be interpreted to nullify or conflict with other terms. *See, e.g., Flatley v. Penman,* 429 Pa.Super. 517, 521, 632 A.2d 1342 (1993).

If one clause appears to conflict with another, the clauses should be construed, if possible, as consistent with one another. *See id.*

Next, in determining the intent of the parties, a court must inquire into the circumstances surrounding the execution of the release. *See, e.g., International Organization Master, Mates and Pilots of America Local No. 2 v. International Organization Masters, Mates and Pilots of America Inc.,* 497 Pa. 102, 112–3, 439 A.2d 621 (1981). The surrounding circumstances clarify the intention of the parties and identify "matters which may be fairly said to have been within the contemplation of the parties when the release was given." *Vaughn v. Didizian,* 436 Pa.Super. 436, 648 A.2d 38 (1994). Only those matters within the contemplation of the parties will be covered by the release. *See, e.g., Jordan v. SmithKline Beecham, Inc.,* 958 F.Supp. 1012, 1019 (E.D.Pa.1997) (citing *Restifo v. McDonald,* 426 Pa. 5, 230 A.2d 199 (1967)). Generally, a release will not bar a claim that accrued after the execution of the release. *See, e.g., Jordan,* 958 F.Supp. at 1019; *Restifo,* 426 Pa. at 11, 230 A.2d 199.

Although the effect of a release will be limited to those matters within the contemplation of the parties at the time the release was executed, "a party cannot evade the clear language of the release by contending that he did not subjectively intend to release the claim at issue." *Id.* at 1020. Furthermore, a release that bars unknown claims will be enforced, even if a party claims that it was unaware of the matter at the time the release was executed. *See id.*

### Discussion

#### 1. *The language of the Release*

In analyzing the effect of the Release, my first order of business is to construe the language of the Release. The Release provides in pertinent part:

> I [Larry Bickings] waive, release and forever discharge Lukens, Inc. . . . of and from any and all claims . . . of any kind . . . whether known or unknown, whether suspected or unsuspected, including without limitation, any and all claims for . . . discrimination based on . . . handicap and/or disability . . . or otherwise (including any claims under . . . the Americans with Disabilities Act, . . . and the Pennsylvania Human Relations Act), or any other claim based on my employment or the termination thereof that I ever had, now have or may have or claim to have in the future against [Lukens] for or by reason or any cause, matter or event whatsoever, from the beginning of time to the date of this General Release Agreement.

Release, ¶ 3.

Reading the plain meaning of the language of the Release, the parties intended a general settlement of all of Bickings's claims against Lukens. The scope of the Release includes "any and all claims" against Lukens. The Release then specifically includes claims for discrimination based on handicap and/or disability, and violations of the ADA and the PHRA. Moreover, the Release specifies that these claims were waived "without limitation." The Release also includes all "unknown" and "unsuspected" claims against Lukens. Claims "for or by . . . any cause, matter, or event whatsoever" are also barred. The only exception to the broad scope of the Release concerns claims for Bickings' employee benefit plan under ERISA. The ordinary meaning of the language of the Release reveals that the Release was intended to be a general settlement of all of Bickings's non-ERISA claims against Lukens, including, of course, Bickings's claims for discrimination for failure to rehire.

#### 2. *The circumstances surrounding the execution of the Release*

The circumstances surrounding the execution of the Release also evidence that the parties contemplated a general settlement of all of Bickings's claims against Lukens, including a claim for discrimination for failure to rehire based on disabili-

ty. At the time Bickings executed the Release, he was already aware that he had been rejected for the new job. At the interview for the new position, he had been questioned about his health and disability. Also, he was asked whether he would suffer any future medical impairments as a result of the disability. There is nothing in the record to suggest that Lukens withheld any information or failed to respond to any inquiries about who was hired in lieu of Bickings before the release was signed. All we know is that at some time Bickings was told that someone more qualified than he was hired although Bickings had been rated well for the position. At the time he signed the Release, Bickings knew that he had been rejected for the job, that inappropriate inquiry had been made about his health, and that he had been rated well for the position. Thus, when the Release was executed, Bickings was in a position to know that Lukens may have improperly based its decision on his disability. The language of the Release and the circumstances surrounding the execution of the Release establish that the Release precludes a claim by Bickings against Lukens for discrimination for failure to rehire.

### 3. *Bickings's contention that the Release waives only his claims against Lukens that are based on his "employment or termination"*

Bickings contends that the Release does not bar his claims against Lukens because the Release bars only claims that are based on Bickings's employment with or termination from Lukens and that the failure to rehire claim was not based on his employment or termination. Bickings construes the phrase "based on my employment or the termination thereof" to limit the scope of all the claims listed in Paragraph 3 of the Release and states that "[t]he plain language of the release indicates that the Plaintiff agrees to 'release and forever discharge Lukens Incorporated ... of and from any and all claims ... based on [his] employment or the termination thereof ...'." Pl.Br. at 9. Under

this construction, the Release would only preclude his claims against Lukens under the ADA and the PHRA if they were based on his prior "employment or termination." According to Bickings, his claim is not based on his "employment or termination," but for Lukens's discrimination in failing to rehire him based on his disability. Therefore, Bickings contends that the Release does not preclude his claim against Lukens.

Bickings's construction would violate the instruction to construe clauses, if possible, as consistent with one another and would impermissibly result in inconsistent terms in the Release. The Release clearly states that Bickings waived "any and all claims" against Lukens. The Release also included claims "for or by ... any cause, matter, or event whatsoever." Furthermore, the Release expressly included claims for violations of the ADA and the PHRA "without limitation." Although claims under the ADA and the PHRA are expressly waived without limitation, Bickings's construction would impose a limitation on these waiver. Construing the phrase "based on my employment or the termination thereof" to modify only the phrase "any other claim" is more consistent with the other express terms of Paragraph 3 of the Release. Therefore, Bickings's claims under the ADA and the PHRA are waived without limitation.

Furthermore, even granting plaintiff's narrow interpretation of the Release, there is no reason to conclude that, in the broad picture of the relationship of the parties, Lukens's decision to not rehire Bickings did not come within the meaning of his "employment or the termination thereof." Bickings was permitted to apply for that position only because he was a recently laid-off Lukens employee. In applying for the job, Bickings used the internal application form that is used solely by Lukens for its employees. *See* Def.Br., Ex. 4. These facts further support the conclusion that the failure to rehire claim comes within the ambit of the Release.

**4.** ***Bickings's contention that his claim for discrimination based on failure to rehire is not barred because it accrued after the execution of the Release***

Bickings also contends that the Release does not bar his claims for discrimination in failing to rehire based on disability because his claim did not accrue until after the Release was executed. According to Bickings, his claims for discrimination accrued "when he reasonably learned he was injured by the Defendant's selection of another lesser-qualified employee." Pl.Br. at 8. Because he learned of the selection of the lesser-qualified applicant for the Machine Shop Planner position in August 1996, Bickings argues that his claim for discrimination accrued after the execution of the Release and, therefore, his claim for failure to rehire was not barred by the Release. *See id.*

As a threshold matter, it is immaterial whether Bickings's claim accrued before the Release was executed because the Release precludes claims that are "unknown" and "unsuspected." Release, ¶ 3. Under Pennsylvania law, a release that bars unknown claims will be enforced, even if a party claims that it was unaware of the matter at the time the release was executed. *See, e.g., Three Rivers Motors*, 522 F.2d at 895–96; *Jordan*, 958 F.Supp. at 1019 (citing *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199 (1967)). In *Three Rivers Motors*, the Third Circuit determined that a general settlement can waive all claims, even when the releasing party is not aware of a particular claim. *See id.* The plaintiff in *Three Rivers Motors* was the operator of a failing Ford automobile franchise. Ford agreed to repurchase the inventory of the failing dealership if the plaintiff executed a general release of claims against Ford. In signing the release, the plaintiff waived "all manner of action . . . whatsoever in law . . . (which the plaintiff) . . . ever had, now have or which they . . . hereafter can, shall or may have, upon or by reason of any matter, cause or thing whatsoever" against Ford. Three years later, the plaintiff brought antitrust claims

against Ford, alleging illegal price-fixing that injured his business. Ford moved to dismiss the plaintiff's complaint on the basis that the plaintiff had waived all of his claims against Ford by executing the release in the repurchase of Three Rivers' assets. The district court found that, prior to signing the release, (1) the plaintiff was unaware that Ford had engaged in alleged price-fixing, and (2) the parties did not discuss the possibility of any antitrust violation. Furthermore, the district court found that the release did not specifically include "known and unknown claims." From these findings, the district court went on to hold that the plaintiff's antitrust claim was not waived by the release because the parties did not intend that the release bar an antitrust action.

The Third Circuit accepted the district court's finding that plaintiff did not know of the specific possibility of an antitrust action when he signed the release and declared that "[t]his alleged lack of knowledge is not sufficient, however, to modify clear and unambiguous terms of a written contract." *Id.* at 894. Citing Pennsylvania law, the Third Circuit stated:

[G]eneral words of a release will not usually be construed to bar a claim which had not accrued at the date of the execution of the release [ ], nor a claim, the existence of which was not known to the party giving the release [ ]. But, the rule is merely one of construction, and is never applicable to bar a claim where the very language used by the parties excludes its use for that purpose.

*Id.,* at 896 (citing *Rapp v. Rapp*, 6 Pa. 45; *Cockcroft v. Metropolitan Life Insurance Co.*, 125 Pa.Super. 293, 189 A. 687). The Third Circuit then determined that the parties unambiguously intended that the release was a general settlement of all accounts and that unknown claims were barred by the terms of the release, even though the release did not expressly include the terms "known and unknown" claims. Because the parties intended to waive all claims between them, the plain-

tiff's antitrust claim against Ford was dismissed. *See id.* at 897.

Like the waiver in *Three Rivers Motors,* the Release executed by Bickings is a general settlement of all claims against Lukens. Bickings's Release is even more explicit than the release at issue in *Three Rivers Motors* because it expressly precludes claims that were "unknown" and "unsuspected." Release, ¶ 3. Under the express language of the Release, therefore, Bickings's action for discrimination against Lukens is barred even if Bickings was unaware of the claim at the time the Release was executed.

Although the determination that Bickings's Release included unknown claims is dispositive of the issue, I will also address the issue of when his claim accrued. In determining when Bickings's claim for discrimination accrued, the Third Circuit's analysis in *Oshiver v. Levin, Fishbein, Sedran & Berman* is instructive. *See* 38 F.3d 1380 (3d Cir.1994). In *Oshiver,* a female attorney (Oshiver) was employed at a law firm as an hourly attorney. On April 10, 1990, the firm dismissed her because, according to the firm, there was insufficient work to sustain her position. The firm told her that it would contact her if either an hourly or an associate position became available. On May, 21, 1991, Oshiver learned that the firm had hired a male attorney to fill her vacant position shortly after her dismissal. In January, 1992, Oshiver learned that the firm had hired a male attorney as an associate. In December, 1992, Oshiver sued the law firm for discrimination based on a wrongful discharge and failure to hire, both in violation of Title VII and the PHRA. The defendant moved to dismiss the complaint because the statute of limitations on her claims had expired. The district court granted the defendant's motion and dismissed the claims.

On appeal, the Third Circuit noted that the accrual of a claim is governed by the "discovery rule," *id.* at 1386, and that, under the discovery rule, a claim accrues upon "awareness of actual injury, not upon

awareness that this injury constitutes a legal wrong." *Id.; see also, Dixon v. Dalton,* 985 F.Supp. 584, 586 (E.D.Pa.1997); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446 (7th Cir.1990); *Merrill v. Southern Methodist Univ.,* 806 F.2d 600 (5th Cir. 1986). The awareness of an injury for accrual purposes occurs when a plaintiff knew or should have known of the injury and that the injury had been caused by another party's conduct. *See id.* at 1386. In determining whether a party "should have known" of an injury, the discovery rule requires that the party exercise reasonable diligence in discovering the injury. *See id.* Applying the discovery rule, the Third Circuit held that Oshiver's claim for wrongful discharge accrued when the law firm informed her of her discharge on April 10, 1990. *See id.* at 1391. The Third Circuit emphasized that "[whether] Oshiver was deceived regarding the underlying motive behind her discharge is irrelevant for purposes of the discovery rule." *Id.*

Although Oshiver's claim for wrongful discharge accrued on April 10, 1990, the Third Circuit remanded the claim to determine whether the statute of limitations for her claim was extended under the doctrine of equitable tolling. According to the equitable tolling doctrine, the statute of limitations stops running after the accrual of a claim when a defendant actively misleads the plaintiff regarding the plaintiff's cause of action. *See id.* at 1387. By giving the plaintiff more time to file suit when a defendant has actively misled the plaintiff, equitable tolling prevents the defendant from benefitting from its own wrongdoing. In *Oshiver,* the court identified three factual issues that must be resolved to determine whether Oshiver should benefit from the equitable tolling doctrine: "(1) whether the firm effectively misled Oshiver with respect to her discriminatory discharge cause of action; (2) if so, whether a person such as Oshiver, with a reasonably prudent regard for her rights, would have been misled by the firm's communication; and (3) if so, wheth-

er a person in Oshiver's position with a reasonably prudent regard for her rights would have learned of the firm's deception sooner." *Id.*

For Oshiver's failure to hire claim, the Third Circuit held that Oshiver did not exercise reasonable diligence in discovering that she was not selected to be an associate.

> Had Oshiver exercised reasonable diligence—had she, for example, telephoned the law firm periodically to monitor the status of her own outstanding associate application, or checked with the firm in May of 1991 after learning that it had hired an hourly attorney shortly after discharging her—she would almost certainly have discovered the associate hiring much earlier.

*Id.* Because Oshiver did not investigate whether an associate had been hired, "the discovery rule affords Oshiver no relief in connection with the timing of the filing of her failure to hire claim." *Id.*

Under the discovery rule applied in *Oshiver,* Bickings's claim for discrimination for Lukens's failure to rehire based on disability accrued on July 11, 1996. On July 11, 1996, Bickings became aware that he had been injured because he learned that his application was rejected. In addition, on that date he was aware that Lukens caused that injury. Therefore, Bickings's claim for discriminatory failure to rehire accrued on July 11, 1996. Because his claim accrued before the Release was executed on July 22, 1996, the Release pre-

cludes Bickings's claim for discrimination based on failure to rehire.[2]

*Conclusion*

I have determined that the ordinary meaning of the language of the Release and the circumstances surrounding its execution require a finding that Bickings and Lukens intended to preclude Bickings's claim for discrimination for failure to rehire based on disability. Therefore, I will grant defendant Lukens's motion for partial summary judgment.

### ORDER

**AND NOW,** this 31st day of January, 2000, I ORDER that defendant Lukens's motion for partial summary judgment (Docket Entry # 9) is **GRANTED.**

2.  I have found no cases that apply the equitable tolling doctrine to toll the accrual of a claim in the context of a release. Even if the accrual date could be tolled under the principles applied in *Oshiver,* equitable tolling would not apply to Bickings's claim. There are no allegations in the complaint or evidence in the record that Lukens actively misled Bickings regarding the rejection of his application. Furthermore, Bickings should have been on notice to make further inquiries regarding who was hired for the vacant position because: (1) he was aware that Lukens agents asked improper questions about his disability in his interview, *see* Compl. ¶ 15; (2) after the interview, he was told that he

interviewed "well," *see* Pl.Br., Ex. A, Bickings Aff. ¶ 4; (3) in the letter that notified him that he was rejected for the position, he was told that the interviewers had rated him "acceptable" and "more than acceptable" in certain competencies, *see* Pl.Br., Ex. B; and (4) the only instance when he inquired about who was hired, the Lukens representative responded, "someone more qualified than you," *see* Tr. of Telephone Conference, January 28, 2000. Because Bickings should have known to make further inquiries regarding who was hired and he did not make those inquiries, the principles of equitable tolling are not applicable to his claim.