At issue is whether WEL, by the TTA's provision entitled "Termination of 1998 License Agreement and Cross-License Agreement and Release," relinquished all rights in its corporate name, "Welding Engineers, Ltd.," which it has used since it was incorporated in 1958. Under Pennsylvania contract law, the rules of contract construction govern the interpretation of releases. Bickings v. Bethlehem Lukens Plate , 82 F.Supp.2d 402, 406 (E.D. Pa. 2000) (citing Evans v. Marks , 421 Pa. 146, 218 A.2d 802 (1966), and Three Rivers Motors Co. v. Ford Motor Co. , 522 F.2d 885 (3d Cir. 1975) ). As such, courts endeavor to ascertain the intent of the parties based on "(1) the language of the release and (2) the circumstances surrounding the execution of the release." Bickings , 82 F.Supp.2d at 406 (citing Wenger v. Ziegler , 424 Pa. 268, 226 A.2d 653 (1967) ). Pennsylvania courts have long held that "a release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given." Restifo v. McDonald , 426 Pa. 5, 230 A.2d 199, 201 (Pa. 1967). The language of the release is viewed in the context of the entire contract. ILM Sys. v. Suffolk Constr. Co. , 252 F.Supp.2d 151, 158 (E.D. Pa. 2002). Additionally, courts must examine the circumstances surrounding the execution of a release to determine the parties' intent, as such circumstances "clarify the intention of the parties and identify 'matters which may be fairly said to have been within the contemplation of the parties when the release was given.' " Bickings , 82 F.Supp.2d at 406 (quoting Vaughn v. Didizian , 436 Pa.Super. 436, 648 A.2d 38 (1994) ).
With these principles in mind, this Court has reviewed the relevant releases in light of the agreements made. NFM argues that Section 13 of the Cross-License Agreement, which outlined the parties' agreements regarding the use of their respective corporate names, is the sole source of WEL's legal right to use its corporate name and logo. NFM further contends that any rights obtained under the Cross-License Agreement, including the use of the corporate name, were extinguished by the following language of the TTA release:
Each Party hereto voluntarily and with full knowledge of its significance, expressly waives, releases and relinquishes any and all rights with respect to the 1998 License Agreement and/or the Cross-License Agreement it may have under any state or federal statute, rule or common law principle, in law or equity, relating to limitations on general releases, specifically under California Civil Code Section 1542 (or any other law or regulation of similar effect, in any jurisdiction), which provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."
(TTA at Section 7.12). NFM's reliance on this provision is misplaced.
When the language in this provision is parsed, it simply means that the parties release any rights they may have "relating to limitations on general releases." The TTA, by way of illustration, cites to California Civil Code Section 1542, which limits general releases from extending to claims unknown at the time of the agreement. As WEL aptly argues in rebuttal, "[t]he purpose of this language is clear and unambiguous: it enables the parties to *431 release both known and unknown claims arising under the License Agreement and Cross-License Agreement, as unknown claims cannot be released in some jurisdictions unless that right is waived explicitly." (ECF 57-1 (Pl.'s Br.) at 41). This Court agrees.
This Court finds that the plain language of Section 7.12 of the TTA clearly provides that the parties are releasing their rights relating to limitations on general releases. Section 7.12 cannot be read to state, as NFM suggests, that the parties are releasing any and all rights they have under the License and Cross-License Agreements, including WEL's rights to the use of its corporate name and logo.
This Court further notes the context and circumstances of the execution of the TTA, as it relates to this issue. See Bickings , 82 F.Supp.2d at 406. The TTA does not once mention or discuss any parties' rights to the corporate name and/or logo. Conversely, the Cross-License Agreement contained explicit language establishing the survival of the parties' rights in their respective use of the relevant trademarks. Specifically, Section 13.5 provided: "The provisions of this Section 13 shall survive termination of the license under this Agreement and termination of any other provision herein." (Id. at Section 13.5). Thus, given the plain and unambiguous language of Section 13.5, merely terminating the Cross-License Agreement was insufficient to extinguish any rights WEL had to the use of its corporate name and logo under the Agreement.[15] This context renders implausible NFM's contention that by executing the TTA, WEL intended to relinquish all of its rights to its corporate name, which it has used since 1958.
For these reasons, summary judgment is granted in WEL's favor as to Counts I (declaratory judgment as to trademark infringement), II (violations of the Lanham Act), III (common law trademark infringement and unfair competition), and VII (unjust enrichment), of NFM's counterclaims.
Count VI of the Counterclaims - Turbulator Technology
At Count IV of the counterclaims, NFM seeks a declaration that certain "disputed devices do not fall within the scope of the TTA's definition of Turbulator Technology and that NFM/Welding Engineers is not subject to any limitation or restriction in use of the devices, and WEL is not entitled to any royalty in relation [sic] NFM/Welding Engineers' use of such devices."[16] Only WEL has moved for summary judgment as to this counterclaim. WEL argues that this counterclaim should be dismissed as not ripe under the Declaratory Judgment Act or, in the alternative, that it is entitled to summary judgment. As explained below, this Court disagrees with WEL as to both arguments, and concludes that this issue is ripe and that WEL is not entitled to summary judgment.
*432 The Declaratory Judgment Act creates a remedy by which federal courts "may declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy." 28 U.S.C. § 2201. Thus, the dispute between the parties must be ripe for judicial intervention; it cannot be "nebulous or contingent," but "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc. , 344 U.S. 237, 244, 73 S.Ct. 236, 97 L.Ed. 291 (1952). Declaratory judgment is only available for "concrete cases admitting of an immediate and definite determination of the legal rights of the parties." Id. at 243, 73 S.Ct. 236.
To determine whether a dispute has matured to a point that permits judicial intervention, courts consider the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. Wyatt v. Virgin Islands, Inc. , 385 F.3d 801, 806 (3d Cir. 2004). A dispute is not ripe if it rests on contingent future events that may not occur as anticipated, or even at all. Id. A court evaluates ripeness by examining (1) the adversity of the parties' interests, (2) the conclusiveness of the judicial judgment, and (3) the utility, or practical help, of a judgment. Step-Saver Data Sys., Inc. v. Wyse Tech. , 912 F.2d 643, 647 (3d Cir. 1990).
Here, all of the ripeness factors are present. Clearly, the parties have adverse legal interests regarding the Turbulator Technology. NFM has alleged an actual dispute between the parties as to whether certain devices fall within the TTA's definition of Turbulator Technology, and whether NFM is required to pay royalties for the sale of those devices. This dispute is prevalent in that NFM is currently paying royalties under protest. The Court also finds that the issue lends itself to a conclusive judgment as there are concrete factual issues to be resolved, i.e. , whether or not the disputed devices fall within the scope of Turbulator Technology. Finally, such a declaratory judgment would have utility to the parties in resolving any royalty dispute. Accordingly, this issue is ripe for adjudication under the Declaratory Judgment Act.
With regard to WEL's merits argument, the Court concludes that genuine issues of material fact exist as to whether the disputed devices fall into the TTA's definition of Turbulator Technology, namely, a device invented and developed by WEL that meets the other relevant criteria. See Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd. , 298 F.3d 201, 210 n.12 (3d Cir. 2002) ("The standard for granting summary judgment on a request for a declaratory judgment is the same as for any other type of relief.") (citations omitted). As such, WEL's motion for summary judgment as to Count IV of NFM's counterclaims is denied.
Count VI of the Counterclaims - HIP Barrels
At Count VI of the counterclaims, NFM seeks two declarations; to wit : (1) that WEL is not permitted to offer HIP barrels to customers, "as it is a proprietary technology used on NFM/Welding Engineers' counter-rotating twin screw extruders both inside and outside the field of use as described in the TTA"; and (2) that NFM is entitled to sell HIP barrels to any customer in any "field of use." Only WEL has moved for summary judgment on this counterclaim. As to the first requested declaration, WEL apparently concedes that the issue is ripe, arguing only that it *433 is entitled to summary judgment on the merits. WEL argues that the second requested declaration should be dismissed as not ripe under the Declaratory Judgment Act or, in the alternative, that it is entitled to summary judgment.
The TTA expressly excluded barrels manufactured with HIP technology from the scope of the "Purchased Technology" that WEL acquired from NFM. (TTA at 1.1.7). The issues raised by NFM's counterclaims, however, revolve around the import of this exclusion as it relates to the parties' respective rights to HIP barrel technology.
As to the first requested declaration-that WEL is not permitted to offer HIP barrels to its customers-WEL "does not dispute that NFM's drawings of HIP barrels were excluded from the scope of transfer effected by the TTA, but certainly disputes that NFM has cornered the market on HIP barrel technology." (ECF 57-1 at 56). As such, WEL argues that it is permitted under the TTA to sell HIP barrels. These disputes have not been factually flushed out in the parties' motions. As with the Turbulator Technology dispute, this Court concludes that genuine issues of material fact exist as to what, if any, HIP barrel technology NFM may preclude WEL from selling. Accordingly, WEL's motion for summary judgment is denied on the first requested declaration in counterclaim VI.
As to the second requested declaration-that NFM is entitled to sell HIP barrels to any customer in any "field of use"-WEL argues that the request should be dismissed as not ripe under the Declaratory Judgment Act, contending that "[f]actual determinations such as the type of HIP barrel sold, to whom, and for what use are just examples of facts that would be needed in order for the court to adjudicate any such dispute." (ECF 57-1 at 57). This Court disagrees, and concludes that the matter is in fact ripe, given that the parties have adverse legal interests, the Court can issue a conclusive judgment, and such a judgment would have utility to the parties. See Step-Saver Data Sys. , 912 F.2d at 647. As to WEL's request for summary judgment, this Court deems that the same issues WEL cited in arguing that the dispute is not ripe-i.e. , factual determinations regarding the type of HIP barrel sold, to whom, and for what purpose-are genuine issues of material fact which preclude summary judgment. Accordingly, WEL's motion is denied with regard to the second requested declaration in Count VI of NFM's counterclaims.
NFM'S MOTION FOR SUMMARY JUDGMENT
WEL's Counts I and II
As noted, at Count I, WEL claims that NFM breached the TTA by failing to provide WEL with the drawings. At Count II, WEL requests a declaratory judgment that such breach is material and, therefore, the "limited license agreements" referenced in the TTA should be terminated.
In its motion for summary judgment as to these two counts, NFM simply contends that it did not breach the TTA. As discussed above, this Court has concluded that NFM did breach the TTA when it failed to provide the drawings. On that basis, this Court granted WEL's motion for summary judgment as to WEL's request for specific performance on the breach-of-contract claim at Count I. Since the issue of a breach of contract has been decided, NFM's motion for summary judgment as to Count I (with regard to specific performance only), and Count II, is denied.
*434 [17]
Damages for Breach of Contract
NFM moves for summary judgment on WEL's request for compensatory damages for the breach-of-contract claim, arguing that WEL has not provided any evidence of damages. In response, WEL asserts that it "[h]as [p]roperly [p]led [d]amages," (ECF 61 at 9); that damages are easily identifiable; and that, at the very least, it is entitled to nominal damages.
A party cannot overcome a motion for summary judgment with respect to damages by merely relying on pleadings. See Berckeley Inv. Grp. Ltd. , 455 F.3d at 201 (holding that once moving party has shown absence of evidence to support non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). Furthermore, the mere assertion that a party "can ... easily identify damages related to the breach," (ECF 61 at 10), without more, is insufficient to overcome a summary judgment motion. Under Pennsylvania law, proving damages resulting from a breach of contract requires a plaintiff to provide a factfinder with "evidence from which damages may be calculated to a 'reasonable certainty.' " Ware v. Rodale Press, Inc. , 322 F.3d 218, 225-26 (3d Cir. 2003) (quoting ATACS Corp. v. Trans World Communications, Inc. , 155 F.3d 659, 668 (3d Cir. 1998) ). For a damages calculation to be capable of reasonable certainty, it must not be " 'too speculative, vague or contingent' upon some unknown factor." ATACS Corp. , 155 F.3d at 669 (quoting Spang & Co. v. United States Steel Corp. , 519 Pa. 14, 545 A.2d 861, 866 (1988) ). Although Pennsylvania contract law does not require mathematical certainty in calculating damages, "the plaintiff must introduce sufficient facts upon which the jury can determine the amount of damages without conjecture." Delahanty v. First Pennsylvania Bank, N.A. , 318 Pa.Super. 90, 464 A.2d 1243, 1257 (1983).
Here, WEL argues that NFM's failure to provide the complete versions of the drawings "prevented [WEL] from manufacturing, servicing, and selling machines and spare parts, resulting in lost sales." (ECF 61 at 10). However, the only evidence WEL points to in support of this argument is a few of NFM's past royalty reports with no explanation provided. This is not a sufficient showing from which a damages calculation can be made to a reasonable degree of certainty. See Ware , 322 F.3d at 225-26. Thus, WEL has failed to present evidence sufficient to for a factfinder to conclude that WEL is entitled to compensatory damages.
WEL correctly asserts, however, that under Pennsylvania law any breach of contract entitles the injured party to at least nominal damages. See Wolfe v. Allstate Prop. & Cas. Ins. Co. , 790 F.3d 487, 497 (3d Cir. 2015) (citing Thorsen v. Iron & Glass Bank , 328 Pa.Super. 135, 476 A.2d 928, 931 (1984), and Scobell Inc. v. Schade , 455 Pa.Super. 414, 688 A.2d 715, 719 (1997) ). To defeat summary judgment based on an entitlement to nominal damages, a plaintiff must request nominal damages in its complaint or seek to amend its complaint to request nominal damages.
*435 Cohen v. Resolution Trust , 107 F. App'x 287, 289-90 (3d Cir. 2004) (applying Pennsylvania contract law to affirm dismissal of a breach-of-contract claim for failure to state a claim for compensatory or punitive damages, and noting that "plaintiffs requested only compensatory and punitive damages in their amended complaint, and nothing in the record suggests that they asked to amend their complaint to include nominal damages."); Norfolk Southern Ry. Co. v. Pittsburgh & West Virginia R.R. and Power Reit , 2014 WL 2808907 (W.D. Pa. June 19, 2014) (applying Pennsylvania contract law to deny summary judgment on breach-of-contract claim where plaintiffs failed to plead damages with reasonable certainty, or to request nominal damages in their complaint, because plaintiffs sought leave to amend to request nominal damages).
In the complaint, WEL requests compensatory damages only, and does not request nominal damages. Further, WEL has not sought to amend its complaint to include a request for nominal damages. Accordingly, NFM is entitled to summary judgment on WEL's request for damages arising from the breach of contract claim.
Counts I, II, and III of the Counterclaims - Trademark Infringement
As to NFM's counterclaims for trademark infringement, i.e. , Counts I (declaratory judgment as to trademark infringement), II (violations of the Lanham Act), and III (common law trademark infringement and unfair competition), these issues were discussed above with respect to WEL's summary judgement motion and, therefore, need not be readdressed. Accordingly, for the reasons previously stated in said discussion, NFM's motion for summary judgment is denied.
CONCLUSION
To summarize, consistent with the analysis made, WEL's motion for summary judgment is granted as to Count I of its complaint for the specific performance of the delivery of the relevant external documents referenced in the drawings NFM produced in October 2016 (excluding drawings of the vertical feeder), and as to Counts I, II, III, and VII of the counterclaims. WEL's motion for summary judgment is denied as to its request for damages at Count I of its complaint, and as to Counts IV, V, and VI of the counterclaims.
NFM's motion for summary judgment is granted as to WEL's request for damages at Count I of its complaint. NFM is also granted summary judgment as to its request at Count V of the counterclaims for declaratory judgment that WEL is not entitled to drawings of the vertical feeder. NFM's motion for summary judgment is denied as to WEL's request at Count I of its complaint for specific performance of the relevant external documents; as to Count II of WEL's complaint; and as to Counts I, II, and III of the counterclaims.
Separate Orders addressing each motion for summary judgment and consistent with this Memorandum Opinion follow.

NFM argues that the TTA extinguished all of WEL's rights under the License Agreement to WEL's corporate name and logo because the TTA contained language stating it "supersedes all prior agreements" and that the License and Cross-License Agreements were terminated by its execution. This conclusion is clearly incorrect, given the language of Section 13.5 of the Cross-License Agreement.

The TTA defines Turbulator Technology as "a proprietary device invented and developed by [WEL] which integrates a cylindrical cutter and cylindrical die (fixed or variable), a pelletizer and a transport system of the comminuted particles either by air or another fluid." (TTA at Section 1.1.8). In the TTA, WEL granted NFM licenses to use the Turbulator Technology for work related to spare parts for Exxon Mobil Corporation and/or its affiliates, as well as another set of companies, in exchange for royalties. (Id. at Section 4.4).

With regard to Count II, this Court notes that the parties did not brief whether NFM's breach was material, or whether termination of the limited license agreements is an available remedy under the TTA. (See TTA at Section 7.1 (providing that, in the event of a breach, the available remedies "shall be limited to a claim for actual damages and/or a possible injunctive relief or temporary restraining order, but neither party shall be entitled to any other equitable relief, including, but not limited to rescission, revocation or other similar remedy.") ). Accordingly, this Court will not address these issues.