**CENTRIX HR, LLC, Appellant in 08–2834**

v.

**ON–SITE STAFF MANAGEMENT, INC., d/b/a Centrix Staffing; Centrix HR Logistics, Inc.; William Black, Appellants in 08–2984.**

**Nos. 08–2834, 08–2984.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 21, 2009.

Opinion Filed: Oct. 19, 2009.

Patrick C. Campbell, Jr., Esq., Phillips, Campbell & Phillips, Lima, PA, for Appellant.

Christopher P. Gerber, Esq., Michael T. Taylor, Esq., Siana, Bellwoar & McAndrew, Chester Springs, PA, for Appellants.

Before: BARRY, FISHER and JORDAN, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Centrix HR, LLC ("HR") appeals various aspects of the final order of the Magistrate Judge, following a bench trial, in which the Magistrate Judge resolved a contractual dispute involving HR and Defendants Centrix HR Logistics, Inc. ("Logistics"), William Black (Logistics' owner), and On–Site Staff Management, Inc. ("On–Site," a successor to Logistics) (collectively "Defendants."). Defendants cross-appeal as to one issue. We will affirm except as to the award of counterclaim damages, which we will remand for further consideration.

## I.

Because we write only for the parties, we recite only those facts as found by the Magistrate Judge that are relevant to our analysis. On May 15, 2002, HR and Logistics entered into a Licensing Agreement (the "Agreement"), whereby Logistics agreed to generate sales of temporary personnel staffing contracts and HR agreed to provide administrative functions for Logistics including the collection of revenues from employers and the payment of salaries, benefits, payroll taxes, and other administrative expenses. Among other things, the Agreement required HR to provide regular reports and financial statements to Logistics, and it contained a noncompete clause, providing that Logistics or any person in control of Logistics may not "[h]ave any interest, direct or indirect, in the ownership or operation of any business similar to that of [HR]'s business, within the licensed area or within 100 miles thereof, for a period of three years after expiration or termination of this Agreement . . . ." (App. at 53–54.) The parties entered into a separate Guaranty Agreement (the "Guaranty") by which Logistics and Black guaranteed the performance and payment of HR's obligations arising out of the Agreement. Logistics and Black did not agree to guarantee losses incurred by HR arising out of HR's gross negligence, intentional misconduct, or intentional material breach of the Agreement.

Although it was not permitted by the Agreement, HR, through its owner, Blaise Mazzoni, used funds collected from Logistics' clients to cover expenses incurred by other companies related to HR and/or Mazzoni. Mazzoni thought it was his obligation to keep all accounts among the various companies positive, and, therefore, used the funds to cover various companies' expenses rather than to pay federal payroll taxes. Mazzoni allocated expenses to the companies based upon their sales value, despite the fact that Black did not consent to the use of funds belonging to Logistics for the benefit of any company

other than Transit Aide, a company also owned by Black.

HR consistently failed to provide financial statements to Logistics as required by the Agreement, and the business relationship between Mazzoni and Black quickly deteriorated. In October 2003, HR and Logistics entered into a Letter of Understanding in which Logistics acknowledged that it was obligated to repay loans from HR to Logistics that had been used to pay for Logistics' operating losses. By November 2003, HR had lost its funding source, and, on December 1, 2003, Black notified Mazzoni and HR of Logistics' intent to terminate the Agreement due to HR's default. Thereafter, Black formed On–Site, which also engages in the temporary staffing business.

HR brought suit against Defendants raising a number of issues, including a claim that Defendants were responsible for HR's inability to pay its tax liabilities because, as a result of their conduct, HR "has been deprived of the assets assigned to it which were earmarked to discharge [the] liabilities." (App. at 11.) Logistics counterclaimed for fees owed to it by HR pursuant to the Agreement.

After a three-day bench trial in October 2007, the Magistrate Judge issued Findings of Fact and Conclusions of Law on March 25, 2008, 2008 WL 783558. The Magistrate Judge found that Logistics was contractually obligated to repay any loans made from HR to Logistics and Transit Aide, but not loans made by HR to other companies, and concluded that Logistics, On–Site (as Logistics' successor), and Black (as guarantor of Logistics' obligations) were liable to HR for loans in the amount of $865,999.36.

The Magistrate Judge also concluded that Logistics properly terminated the Agreement because HR breached it in numerous ways, but that Black breached the Agreement's non-compete clause by estab-lishing On–Site. Because HR failed to demonstrate damages arising from breach of the non-compete clause, however, only $1.00 in nominal damages was awarded.

The Magistrate Judge found that HR's remaining claims—for intentional interference with contractual relations, an accounting, civil conspiracy, conversion, unfair competition, and violation of the Racketeer Influenced and Corrupt Organizations Act—failed. Finally, the Magistrate Judge found in Logistics' favor on the counterclaim, awarding $1,603,673 in damages based on the finding that HR's books of original entry showed a net due to Logistics of $1,603,673 on the last date for which financial statements were prepared. Logistics' award on its counterclaim was offset by the amount owed by Defendants to HR, so that the Magistrate Judge's final order required HR to pay $737,673.70 in damages.

HR moved for reconsideration, and Defendants moved for relief pursuant to Federal Rules of Civil Procedure 52, 59, and 60. In one order resolving all post-trial motions, dated June 3, 2008, 2008 WL 2265266, the Magistrate Judge granted Defendants' motion in part and amended the Conclusions of Law such that Black was not personally liable for the repayment of loans made to Logistics by HR, given the plain language of the Guaranty. HR's motion was denied in its entirety.

On appeal, HR argues that the Magistrate Judge erred when he: (1) awarded $1.6 million to Logistics on its counterclaim, (2) granted Defendants' post-trial motion in part, (3) failed to hold Black and Logistics liable for HR's tax obligations, (4) allowed Black and On–Site to offset damages awarded on Logistics' counterclaim, and (5) denied HR's request for an accounting to determine damages on its claim for breach of the non-compete clause. In their cross appeal, Defendants

argue that the Magistrate Judge erred in concluding that they breached the non-compete clause. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

█ In this appeal from a trial to the bench, we review findings of fact for clear error and conclusions of law de novo. *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir.2009). Factual findings are clearly erroneous if we are "left with a definite and firm conviction that a mistake has been committed," and we must uphold factual findings "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir.2009) (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir.1972) and *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

## A. Counterclaim Damages

█ HR argues that the Magistrate Judge clearly erred when he awarded approximately $1.6 million to Logistics on its counterclaim, representing the net amount due to Logistics based on HR's own books. HR does not appear to dispute that its books showed that it owed Logistics a net amount of $1.6 million at the conclusion of the parties' relationship. It argues, however, that the correct amount of damages should have been $505,965, because, at various points in the litigation, Defendants made clear that they were seeking only $505,965 in damages on the counterclaim.

Defendants' expert testified at trial that the total amount owed to Logistics was $1.6 million, but he also testified, almost immediately thereafter, that $505,965 was "the amount that would be required to restore [Logistics] to the financial position it otherwise would have been in, had there been no breach that is alleged in the counterclaim"—"the amount due to Logistics from [HR]. . . ." (App. at 229.) Moreover, while the $1.6 million figure is listed as "net amount due [Logistics]" in Exhibit B to the expert's rather sparse report,[1] Exhibit A to that report lists $505,965 as the "Total Net Amount Due [Logistics]." (*Id.* at 107–08.) Defendants also argued for $505,965 in their Proposed Findings of Fact and Conclusions of Law and post-trial brief (although, at another point in the brief, they stated that the total amount owed by HR to Logistics was $1.6 million and that any award to HR should be offset by this amount), and counsel summarized the counterclaim to the Magistrate Judge saying "my client is out a half of a million bucks." (*Id.* at 279.)

HR moved for reconsideration of the $1.6 million award. The Magistrate Judge denied the motion, concluding that the Proposed Findings of Fact and Conclusions of Law were not evidence, that there was sufficient evidence to support the $1.6 million figure in the form of HR's own records and Defendants' expert's unrefuted testimony, and that at trial Defendants' expert qualified his calculation of $505,965, stating: "Yeah, when you take everything into account and if you accept the arguments in the counterclaim and if you find liability, that would be the amount. . . ." (*Id.* at 229.) The Magistrate Judge stated that it was "unclear" what the expert thought had to be taken "into account" to arrive at the $505,965 figure or even which counterclaim the expert was referencing. (*Id.* at 393). What is clear, at least to us,

---

1. We note that the Magistrate Judge may have made a clerical error when he used the $1,603,673 figure because Defendants' expert's report, at Exhibit B, states that the net amount due to Logistics, based on HR's books, was $1,603,901. Neither party seeks correction of this error and, therefore, we need not address it.

is that the expert directly, albeit confusingly, undermined the $1.6 million figure and did so right on the heels of having first espoused it.

Given the contradictions noted above, the inadequate explanation by the parties and the Magistrate Judge of those contradictions, and the somewhat haphazard portions of the record presented to us on appeal, we are unable to determine that the Magistrate Judge's award of $1.6 was clearly erroneous—or that it was not. Accordingly, we will remand this issue to the Magistrate Judge for clarification or recalculation of that award. We are confident that, following clarification or recalculation, there will be no need for further review.

### B. Black as Guarantor for Logistics

■ HR argues that the Magistrate Judge erred in considering Black's claim that he was not personally liable for Logistics' obligations because Defendants raised this claim for the first time in their post-trial motions. In his order, however, the Magistrate Judge cited numerous places in the record where Defendants had claimed that the plain language of the Guaranty controlled the parties' obligations as guarantors, and HR does not challenge these citations. Moreover, the plain language of the Guaranty makes clear that Black agreed to guarantee certain obligations of *HR* pursuant to the Agreement, not the obligations of Logistics. Therefore, we agree with the Magistrate Judge that the evidence supports the conclusion that Black was not personally liable for the debts of Logistics to HR.

### C. Liability for Outstanding Tax Liabilities

■ HR argues that, according to the Magistrate Judge's interpretation of the Guaranty, Black and Logistics are responsible for paying HR's liability to the IRS and other obligations because Black and Logistics had guaranteed those obligations. HR does not, however, challenge the findings of the Magistrate Judge that Mazzoni and HR intentionally breached the Agreement in several ways, including by intentionally failing to pay federal payroll taxes. The Guaranty provides that Black and Logistics "shall not be responsible for any loss incurred by [HR] arising out of [HR's] own gross negligence, or intentional misconduct or intentional material breach in its performance of the Licensing Agreement." (App. at 76.) Because HR fails to challenge any of the findings of intentional breach, its argument that the Magistrate Judge's interpretation of the Guaranty necessitates a finding that Defendants guaranteed HR's tax obligations fails.

### D. Offset of Damages

■ HR argues that, because the counterclaim was brought only on behalf of Logistics, Black and On–Site should not be able to use the $1,603,673 awarded on the counterclaim to offset their joint and several liability for the $865,999.36 that the Magistrate Judge found Defendants owed to HR. Because, as discussed above, Black is not personally liable for repayment of HR's loans to Logistics, Black has no personal liability for the $865,999.36 owed by Logistics. As for On–Site, the Magistrate Judge concluded that it was a successor corporation to Logistics and was therefore liable to HR for the amounts that Logistics owed to HR. Because Logistics owed nothing after offset, On–Site owes nothing.

### E. Request for an Accounting

HR argues that the Magistrate Judge should have ordered an accounting to establish HR's damages on its claim for breach of the non-compete clause because its failure to present evidence of damages was a direct result of Defendants' wrongful

refusal to produce relevant documents. Black admitted at trial that he received a request for records relating to On–Site's sales activity from HR's counsel, but that he did not comply.

Addressing HR's argument on reconsideration, the Magistrate Judge correctly refused to order an accounting both because HR never requested one as to the relevant count of the complaint and because HR had an adequate remedy at law, i.e., a claim for damages, *see Rock v. Pyle,* 720 A.2d 137, 142 (Pa.Super.Ct.1998). The Magistrate Judge recognized that Defendants failed to produce relevant financial documents, but noted that the documents were originally requested on January 31, 2006 and that, after that date, HR did nothing further to obtain them until the time of trial almost two years later.

■ In Pennsylvania [2], the burden is on the plaintiff to prove damages. *Omicron Sys., Inc. v. Weiner,* 860 A.2d 554, 564 (Pa.Super.Ct.2004). Unlike in some contracts, in this Agreement there is no damage provision for breach of the non-compete clause, *compare id.* at 565, and, therefore, the measure of damages is lost profits, proved to a "reasonable certainty." *Scobell, Inc. v. Schade,* 455 Pa.Super. 414, 688 A.2d 715, 719 (1997). It is clear that an award of damages "cannot be based upon mere guess or speculation." *Id.* In cases where a defendant's wrongful conduct renders an exact calculation of damages difficult, however, courts will not permit a defendant to profit from its misconduct by allowing the defendant to avoid damages based on the plaintiff's failure to provide precise evidence of damages. In *Judge Technical Services, Inc. v. Clancy,* 813 A.2d 879, 886–87 (Pa.Super.Ct.2002), the court upheld the trial court's "just and reasonable estimate" of damages in a case where defendants in-

tentionally and repeatedly ignored numerous discovery orders and then argued that plaintiffs failed to prove damages.

■ Here, unlike in *Clancy,* Defendants have not disobeyed repeated discovery orders and there is no evidence from which there could be a reasonable estimate of damages for breach of the non-compete clause. In addition, the Magistrate Judge found, and HR does not dispute, that HR was out of business at the time the Agreement was terminated, prior to the existence of On–Site, because it lost its funding source, not because of competition with On–Site. The Magistrate Judge's award of nominal damages on HR's claim for breach of the non-compete clause was eminently appropriate.

**F. Cross–Appeal: Liability for Breach of Non–Compete Clause**

■ In their cross-appeal, Defendants argue that they were no longer bound by the non-compete clause after the Agreement's termination, based on the general principle that a party that materially breaches a contract may not seek damages resulting from the other party's subsequent refusal to perform its obligations. *See J.W.S. Delavau, Inc. v. Eastern Am. Transport & Warehousing, Inc.,* 810 A.2d 672, 686 (Pa.Super.Ct.2002).

■ The non-compete clause specifically contemplates an ongoing obligation after the Agreement's termination, however, and the Magistrate Judge correctly concluded that this provision continued to have effect, despite the fact that Defendants were justified in terminating the Agreement due to HR's breach. The general principle of Pennsylvania law cited by Defendants is not applicable under these circumstances, where the parties did each (at least somewhat) successfully perform

---

**2.** The Agreement provides for the application of Pennsylvania law.

their obligations under the Agreement for a time prior to termination. The Magistrate Judge's finding that HR breached the Agreement did not give Defendants license to declare the entire Agreement void and discharge their own continuing obligation under the non-compete clause. Therefore, we agree with the Magistrate Judge that Defendants breached that clause.

### III.

For the reasons discussed above, we will remand the award of counterclaim damages for further consideration, and in all other respects will affirm the Order of the Magistrate Judge.